142 N.J. Super. 372 (1976)
361 A.2d 586
STATE OF NEW JERSEY, PLAINTIFF,
v.
JOHN T. GREGORIO, DEFENDANT.
Superior Court of New Jersey, Law Division (Criminal).
Decided February 23, 1976.
*374 Mr. Raymond A. Brown for defendant (Messrs. Brown & Vogelman, attorneys).
Mr. Ronald A. Abramowitz, Assistant Prosecutor, for the State (Mr. Edward W. McGrath, Prosecutor of Union County).
DAVIDSON, J.S.C.
Defense counsel objected to the prosecutor's opening statement to the jury in this criminal case. *375 He claimed that the prosecutor, in outlining the State's case, referred to proofs which the State obtained by impermissibly using defendant's grand jury testimony.
Defendant had testified before the Union County grand jury inquiring into municipal corruption in Linden, New Jersey, on several occasions during 1972 and 1975. Subsequent to his grand jury testimony he was indicted for bribery, attempted extortion and perjury.[1] During this period defendant was the mayor of Linden.
Because of defendant's status as a public employee he was entitled to a self-executing legislative grant of immunity from the use of his grand jury testimony or any evidence derived therefrom in subsequent criminal proceedings. N.J.S.A. 2A:81-17.2a2; State v. Vinegra, 134 N.J. Super. 432, 440 (App. Div. 1975).
In Kastigar v. U.S., 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), the Supreme Court held that, once a defendant demonstrates that he testified under a grant of immunity, the State has the burden of showing that the evidence it intends to produce is not tainted with defendant's own testimony, by establishing that the State has an independent legitimate source for the evidence other than that testimony. This burden is referred to as a "heavy" one. It is not limited just to the negation of taint, but it imposes an affirmative duty on the State to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony. 406 U.S. at 460, 92 S.Ct. at 1665, 32 L.Ed.2d at 226; State v. Vinegra, supra 134 N.J. Super. at 440. Thus, the court is concerned not only with the use of defendant's words themselves, but with any derivative use the State may have made of what defendant said before the Union County grand jury.
*376 The court, therefore, held an evidentiary hearing consistent with Kastigar and Vinegra to determine whether the evidence the State proposed to introduce against defendant, as set forth in the State's written offer of proof, was tainted and must, therefore, be suppressed.
The court read the testimony of defendant on the occasions of his appearance before the Union County grand jury. Not every word that defendant testified to in his six appearances before the grand jury was read, but rather those portions of the transcript called to the court's attention by counsel and those portions in which reference is made to the subject matter of this indictment.
Further, the court heard the testimony of Prosecutor's Detective Russell Thomas, former Assistant Prosecutor Eugene Rosner, Prosecutor's Investigator Bonelli and Dominick Mirabelli, Esquire, counsel for Thomas Siggia.
The court also read the grand jury testimony of the three persons named in the State's offer of proof, namely, Thomas Siggia, Nicholas Perna and Edward Kologi.
The court in addition read several portions of defendant's grand jury testimony which were unrelated to the charges in the present case in order to appreciate the method of questioning before the grand jury. The court did this in anticipation of defense counsel's argument that the broad extent and kaleidoscopic pattern of questioning in the grand jury make it impossible for the State to establish an independent source of information. Defendant's counsel has referred to his argument as a "ball of wax" approach. The court will accept this designation as a convenient label by which it can discuss his argument.
The court notes at the outset that it is not called upon in this hearing to judge the quality or the efforts of the staff of the Union County Prosecutor's Office as it undertook a broad investigation into possible municipal corruption in the City of Linden. The court is only concerned with the particular indictment at hand, an indictment in which defendant is charged in count 1 with bribery and in count 2 with attempted *377 extortion by a public official in that he solicited the sum of $25,000 from Thomas Siggia, the vice-president of the corporation that was the successful bidder and built the Linden Vocational-Technical High School.

Constitutional Principles Involved
The court in this case is required to keep in balance two basic rights of the citizens of our country. On the one hand, there is the power of the government to compel persons to testify in court or before a grand jury. This right is firmly established in Anglo-American jurisprudence and is often referred to as the common law principle that the public has a right to every man's evidence. This right is reflected, indeed delineated, in the Sixth Amendment to the Constitution. Murphy v. Waterfront Comm'n, 378 U.S. 52, 93-94, 84 S.Ct. 1594, 12 L.Ed.2d 678, 704 (1964); Kastigar v. U.S., supra, 406 U.S. at 443, 92 S.Ct. 1653, 32 L.Ed.2d at 216.
Opposite this right is the right of every citizen not to be forced to incriminate himself even if he is compelled to testify. This important right against compulsory self-incrimination is embodied in the Fifth Amendment to the Constitution. Ullmann v. U.S., 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956); Kastigar v. U.S., supra, 406 U.S. at 444, 92 S.Ct. 1653, 32 L.Ed.2d at 216.
The issue before the court at this time involves an accommodation of these two basic principles. In re Tuso, 140 N.J. Super. 500 (App. Div. 1976). A person who is compelled to testify under a grant of immunity, except for possible criminal prosecution for perjury or false swearing, is entitled to be put in the same position as though he had not testified if the State chooses to go ahead with a criminal prosecution relating to the subject matter of defendant's compelled testimony. Murphy v. Waterfront Comm'n, supra, 378 U.S. at 79, 84 S.Ct. 1594, 12 L.Ed.2d at 695; Kastigar v. U.S., supra, 406 U.S. at 457, 92 S.Ct. 1653, 32 L.Ed.2d *378 at 224; U.S. v. DeDiego, 511 F.2d 818, 822 (D.C. Cir.1975).

Conduct of a Kastigar Hearing
This court was unable to find any New Jersey cases that set forth the procedure a court should employ in conducting this kind of an evidentiary hearing other than State v. Vinegra, supra 134 N.J. Super. at 440, which merely notes that the holding in Kastigar must be followed in New Jersey.
The court, therefore, has looked for guidance to the reported federal decisions which have discussed the question presented in this case. The federal courts which have held Kastigar hearings proceeded by examining the Government's proffered evidence, the testimony of defendant, the sources of the Government's evidence, and what use, if any, the Government made of defendant's testimony. U.S. v. First Western State Bank, 491 F.2d 780 (8 Cir.1974); U.S. v. McDaniel, 352 F. Supp. 585 (D.N.D. 1972), rev'd 482 F.2d 305 (8 Cir.1973).
In First Western State Bank the bank and six individuals were indicted by a federal grand jury and charged with making illegal political contributions and conspiring to cause the bank to make illegal political contributions.
Defendants did not testify before the federal grand jury. However, they did testify before a state grand jury, under a grant of immunity, prior to the presentment of the federal indictment. Defendants moved to quash the federal indictment, claiming that the Federal Government impermissibly used their state grand jury testimony in procuring the federal indictment. The trial judge heard testimony from members of both the State Attorney General's Office and the United States Attorney's Office. It also examined in camera the transcript of the state and federal grand jury proceedings and the F.B.I. reports concerned with this case.
The Court of Appeals, in reviewing the trial judge's action, held that if the Government could demonstrate that it did *379 not have access to the defendants' state grand jury testimony and that the F.B.I. reports and federal grand jury testimony constituted an independent source for its evidence, then the Kastigar test was met.
In U.S. v. McDaniel, supra, defendant appeared before a state grand jury and testified under a grant of immunity. Defendant did not testify before the federal grand jury which indicted him subsequent to his appearance before the state grand jury. The trial judge read defendant's state grand jury testimony and heard testimony from members of the U.S. Attorney's Office. At this hearing the federal prosecutor stated that he had read the three volumes of defendant's state grand jury testimony before he presented his case to the federal grand jury.
The trial judge's opinion listed the substance of each of the 12 counts in the indictment and Defendant's testimony before the state grand jury relating to each count. The judge found that defendant's state grand jury testimony touched upon the substance of each of the 12 counts of the federal indictment. He found, however, that the Government had met the Kastigar test by showing that the F.B.I. reports, prepared prior to defendant's appearance before the state grand jury, possessed the information which led to the federal indictment.
The Court of Appeals reversed the trial court. It was not convinced that the Government had made no use of defendant's state grand jury testimony in light of the fact that the federal prosecutor had read defendant's testimony, unaware that it was given pursuant to a grant of immunity. The court was concerned that the prosecutor had used that testimony in formulating questions, deciding whom to call as witnesses, or in planning the conduct of his case. The court, therefore, found the proffered evidence to be tainted.
In Kastigar the Supreme Court indicated that this kind of an evidentiary hearing is similar to the inquiry a court makes before a confession is offered by the State. 406 U.S. *380 at 461, 92 S.Ct. 1653, 32 L.Ed.2d at 226. The court therefore also examined by way of analogy cases concerning the admissibility of a statement made by a defendant.
The first inquiry in this case concerns the substance of defendant's statements before the grand jury on those occasions when he was questioned about the subject matter of this indictment. Defendant denied flatly and unequivocally that he solicited a bribe or attempted to extort money from Thomas Siggia. He made no admission, let alone a confession, concerning these two charges He thus gave no blueprint that would be found in a confession that the prosecutor could hold before him for his guidance in discovering, confirming or corroborating other evidence.
However, the State still bears the burden of demonstrating that the evidence it proposes to introduce is not tainted by defendant's testimony before the grand jury. The State has set forth in its written offer of proof what testimony it expects to produce from its witnesses, Thomas Siggia, Nicholas Perna and Edward Kologi. The court, therefore, must examine and determine whether this proffered evidence is derived from legitimate independent sources.[2]

Testimony of Thomas Siggia
The State's offer of proof states that the prosecution will elicit testimony from Thomas Siggia detailing his connection with Power-Flow, Inc. and his acquaintanceship with defendant. The State contends that Thomas Siggia will testify that defendant appeared in his office and requested a $25,000 payment to insure that Power-Flow, Inc. received its payments on time and was awarded the "extras" on the high school project.
*381 The court heard the testimony of Detective Thomas who stated that early in this broad investigation, in the first part of 1971, he had heard that defendant demanded $25,000 from the principals of Power-Flow, Inc. in reference to the construction of the Linden Vocational-Technical High School. The witness declined to give the source of that information on cross-examination. However, he admitted that he discounted the source of this information in such a way that the information had no significance to him. Therefore, the court finds that this source is not a legitimate source of information for the purposes of this hearing.
Thomas testified that the investigation, at least the portion which dealt with the Linden Board of Education, was delayed because certain records had been subpoenaed by the federal authorities. The matter which is the subject of this indictment was not pursued, therefore, until 1974.
Thomas stated that it was not until 1974 that he and others from the prosecutor's office met with Siggia, the vice-president of Power-Flow, Inc., and his attorney. At that time, in order to help himself, Siggia said that he would give the prosecutor information concerning what he might know of the building of the high school in Linden and any wrongdoing, particularly with reference to defendant. The court finds this meeting with Siggia to be the source of the evidence upon which this indictment is based.
The court finds that the testimony of Siggia meets the Kastigar test and that this evidence is derived from a legitimate source wholly independent of defendant's testimony. Although it is true that defendant knew of Power-Flow, Inc. and indicated in his testimony before the grand jury that he knew Siggia, nothing defendant said led to the information Siggia gave. See U.S. v. Catalano, 491 F.2d 268, 272 (2 Cir.1974). The prosecutor's office knew the identity of Siggia and that Power-Flow, Inc. had the contract to build the high school as early as 1971. The court is not of the opinion that the proffered evidence must be wholly exclusive *382 of anything that was ever touched upon by the testimony of defendant, so long as the evidence was derived independently of his testimony.

Testimony of Nicholas Perna
The State's proffer indicates that Nicholas Perna will testify about his political and social affiliations with defendant, his relationship with Power-Flow, Inc., and that defendant often visited him at the offices of Power-Flow, Inc.
With respect to the testimony of Nicholas Perna, the court is confronted with a somewhat different situation. The court finds that some of Perna's testimony came either directly or derivatively from defendant's testimony. Detective Thomas testified that he knew of Perna and Perna's friendship with defendant prior to 1972. Therefore, the court will permit Perna's testimony relative to his acquaintanceship and friendship with defendant.
The court will not permit testimony from Perna concerning the deterioration of the friendship because it finds as a fact that it does not meet the Kastigar test. The first mention in the proofs of the deterioration of this friendship was defendant's grand jury testimony of May 26, 1972. This was the initial source of the State's knowledge that the friendship waned. No independent source was established.
Likewise, the court will not permit Perna to testify about defendant's visiting him regularly at Power-Flow, Inc., for the State also failed to produce an independent source for this testimony.

Testimony of Edward Kologi
Edward Kologi is expected to testify, according to the State's offer of proof, about defendant's visiting the offices of Power-Flow, Inc. and defendant's friendship with Nicholas Perna. Kologi also will be called to testify that defendant voiced surprise when he heard that Power-Flow, Inc. was the successful bidder on the high school project.
*383 Edward Kologi appeared before the grand jury on at least two occasions, one preceding and one following defendant's initial appearance. In his first appearance Kologi testified about his knowledge of Perna's connection with Power-Flow, Inc. He also testified about defendant and Perna's friendship. This testimony, the court finds, meets the Kastigar test.
However, the court will not permit Kologi to testify about his driving defendant to Power-Flow, Inc. to visit Perna because that information came from defendant's testimony and no independent source was shown. Nor will the court permit Kologi to testify that defendant was surprised or shocked that Power-Flow, Inc. was the successful bidder for the contract of the high school. The sole source of this information was defendant's testimony of May 19, 1972.

Burden of Proof
Neither Kastigar nor Vinegra speak in the familiar legal terms of preponderance of the evidence, clear and convincing evidence, or beyond a reasonable doubt, with regard to the quantum of proof necessary to fulfill the "heavy" burden of proof imposed by the Kastigar Court. Evid. R. 1 (4); N.J.S.A. 2A:84A-5. The Fifth Circuit has held that a preponderance of the evidence is sufficient, stating that this is consistent with the burden in the federal courts with respect to Miranda hearings. U.S. v. Seiffert, 501 F.2d 974 (1974).
This court adopted the clear and convincing standard in reviewing the evidence in this hearing. The clear and convincing standard falls somewhere between the ordinary civil standard of preponderance of the evidence and the criminal standard of beyond a reasonable doubt. Evid. R. 1(4); N.J.S.A. 2A:84A-5; Lepre v. Caputo, 131 N.J. Super. 118, 123 (Law Div. 1974); McCormick, Evidence, § 340 at 796 (1972). It should produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. The party with such a burden must present the court with clear and unequivocal *384 proof of facts upon which it may reach a reasonable conclusion. Lepre v. Caputo, supra at 124.
In light of the important constitutional interest to be protected and the fact that the Supreme Court described the burden as a "heavy" one, this court is persuaded that clear and convincing is the proper standard to be applied by a court in a Kastigar-type evidentiary hearing.

State's Argument
The court rejects the prosecutor's first argument that it has shown that the evidence it proposes to introduce is not tainted by demonstrating that defendant denied committing the offenses charged. Although defendant denied any wrongdoing, his testimony did contain information which the State must show it did not use.
The prosecutor's burden is to affirmatively demonstrate to the court's satisfaction that the evidence was derived from a legitimate source independent of defendant's grand jury testimony. Kastigar, supra, 406 U.S. at 460, 92 S.Ct. at 1665, 32 L.Ed.2d at 226; U.S. v. Catalano, supra at 272. This burden has been met by the State in all but those instances noted by the court.

Defendant's Argument
Defendant's argument, denominated the "ball of wax" approach has been recognized by other courts which have dealt with the issue presented in this case. U.S. v. McDaniel, 482 F.2d 305 (8th Cir.1973); U.S. v. Dornau, 359 F. Supp. 684 (S.D.N.Y. 1973). However, this approach is not applicable to the facts in this case. The "ball of wax" approach refers to a situation in which a defendant's testimony and the prosecutor's use thereof so pervades a case that it is impossible for a court to restore a defendant to the position he would have been in had he never testified.
For example, in both McDaniel and Dornua, supra, the prosecutor, prior to presenting his case to the federal grand *385 jury, had read defendant's testimony given under a grant of immunity before a state grand jury. In each of these cases the court held that the Government failed to carry its burden of proving that it made no use of defendant's protected testimony. The courts held that the Government was not able to prove that the prosecutor, having read defendant's earlier testimony, did not make some use of it in preparing or presenting his case to the federal grand jury.
That is not the case here. Defendant flatly denied any wrongdoing, and that information which defendant gave to the State for which the State could not prove a legitimate independent source has been suppressed.
This court is satisfied, therefore, that its evidentiary ruling on the State's offer of proof has restored defendant to the position he would have been in had he never testified before the Union County grand jury, and in so doing preserved his Fifth Amendment rights.
NOTES
[1] Because defendant's grand jury testimony would be introduced against him to prove the perjury charge, the perjury count of this indictment was served on the court's motion. See State v. Vinegra, 134 N.J. Super. 432, 441 (App. Div. 1975).
[2] As far as the offer of proof is concerned, the court is not called upon at this time to rule on the admissibility of this proffered evidence with respect to its materiality, relevancy or competency. The court will deal with those issues during the course of the trial.