246 N.J. Super. 634 (1990)
588 A.2d 453
RICHARD T. BREZIZECKI, PETER J. BARTUS, WILLIAM MOTLEY, CHESTER FORTUNA, JOHN G. HUDAK AND ROBERT S. WEISINGER, PLAINTIFFS,
v.
JOHN T. GREGORIO AND WALTER HALPIN, UNION COUNTY CLERK, DEFENDANTS.
Superior Court of New Jersey, Law Division Union County.
Decided May 7, 1990.[1].
*636 Arnold Jay Gold and Aldan O. Markson for plaintiffs.
Theodore J. Romankow, Esq. and Judith A. Millman for defendant Gregorio (Garrubbo, Dorian & Romankow, attorneys).
BEGLIN, A.J.S.C.
May a former public official, required by law to forfeit his office upon conviction for a crime and disqualified "forever" from holding office, seek public office again after receiving a gubernatorial pardon? No New Jersey court has decided that question.
This action is brought by residents and registered voters of the City of Linden. They challenge the right of John T. Gregorio, a recent recipient of a pardon by Governor Thomas H. Kean, to seek the Democratic Party nomination for mayor of the City of Linden.
Gregorio was convicted by jury on December 19, 1982 of a second-degree conspiracy. As a result, pursuant to N.J.S.A. 2C:51-2a, he automatically forfeited the two public offices he *637 then held, state senator for the 21st legislative district and mayor of the City of Linden[2].
On January 12, 1990, Governor Kean granted a full and free pardon to Gregorio for the aforesaid conviction.
Plaintiffs rely upon the plain language of the statute in asserting that Gregorio is barred from running for public office again:
In addition to the punishment prescribed for the offense, and the forfeiture set forth in 2C:51-2a, any person convicted of an offense involving or touching on his public office, position or employment shall be forever disqualified from holding any office or position of honor, trust or profit under this State or any of its administrative or political subdivisions. [N.J.S.A. 2C:51-2c.]
The county clerk is joined as a party defendant because Gregorio has filed petitions seeking the nomination of the Democratic Party in the June 5, 1990 primary election as a candidate for mayor of Linden. The county clerk is under statutory duties to prepare the ballot for that election (see generally, N.J.S.A. 19:23-1 et seq. and more specifically, N.J.S.A. 19:23-22.4) and, although not entering an appearance, has agreed to be bound by the judgment of the court.
Many constitutional or statutory provisions provide that a conviction of certain crimes renders the one convicted ineligible to hold public office.
There is general agreement among the courts that the granting of a pardon to an offender will not restore him to a public office which he has forfeited as a result of his conviction. However, there does not appear to be such a well-settled rule concerning the effect of a pardon on the eligibility of the one pardoned to hold public office.
Crucial to the determination whether a pardon will restore eligibility of the one pardoned to hold a particular office is the view that the court takes as to the general effect of the pardon. [Annotation, "Pardon as Restoring Public Office or License or Eligibility Therefor," 58 A.L.R.3d 1191, 1195 (1974).]
Historically, pardon was conceived as the voluntary act of the sovereign. Now, the pardon is recognized in almost all states as an executive function. In New Jersey, the pardon is a constitutional power bestowed upon the Governor. N.J.Const. *638 (1947), Art. V, § 2, par. 1 states: "The Governor may grant pardons and reprieves in all cases other than impeachment and treason...." Pardon, however, is not founded upon innocence.
The principle universally propounded is, that pardon is an exercise of sovereign or executive clemency toward the guilty ... Pardon implies guilt. If there be no guilt, there is no ground for forgiveness. It is an appeal to executive clemency. It is asked as a matter of favor to the guilty. It is granted not of right but of grace. A party is acquitted on the ground of innocence, he is pardoned through favor. [Cook v. Middlesex County Freeholder Bd., 26 N.J.L. 326, 331, 333 (Sup.Ct. 1857), aff'd 27 N.J.L. 637 (E. & A. 1858). See also In re N.J. Court of Pardons, 97 N.J. Eq. 555, 562, 129 A. 624 (1925).]
What is pardoned, then, is the crime; the offense is forgiven. The guilty offender is discharged and released from the penalties suffered as a result of the transgression.
Pardon is a remission of guilt and a declaration of record by the authorized authority that a particular individual is to be relieved of the legal consequence of a particular crime. [In re Fitzpatrick, 9 N.J. Super. 511, 519, 75 A.2d 636 (Cty.Ct. 1950), aff'd o.b. 14 N.J. Super. 213, 82 A.2d 8 (App.Div. 1951).]
The civil disabilities attendant to the conviction are removed and, in that sense, the offender is made a new person. The pardon is said to give the offender "a new credit and capacity." In re N.J. Court of Pardons, supra, 97 N.J. Eq. at 567, 129 A. 624. Defendant, therefore, urges that, since the conviction produced the forfeiture of office, the pardon of that conviction extinguished the disability.
A full pardon restores all rights of citizenship. Having been pardoned of the crime, the offender acquires the legal capacity to live free of that guilt and can no longer be deprived of those civil rights which the conviction had removed.
By way of illustration, after being pardoned a convicted perjurer is permitted to testify. The exclusion of the testimony rested upon the conviction and once that legal disability has been removed by the pardon, one can again become a witness. The conviction nevertheless may be shown to impeach the testimony because it is the prior guilt of a witness that bears upon credibility, and as a pardon presupposes guilt, it does not necessarily make the witness honest.
*639 Although the pardon removes the legal disabilities attendant to the conviction, it does not obliterate all consequences. When there is a requirement that the offender show good moral character, the pardon will not preclude use of the underlying crime, because then it is not the conviction but one's character that is relevant. This is typically found in situations where a pardoned offender seeks citizenship, restoration of the right to practice a profession or hold certain licenses, or to become a law enforcement officer.
The true line of distinction seems to be this: The pardon removes all legal punishment for the offense. Therefore if the mere conviction involves certain disqualifications which would not follow from the commission of the crime without conviction, the pardon removes such disqualifications. On the other hand, if character is a necessary qualification and the commission of a crime would disqualify even though there had been no criminal prosecution for the crime, the fact that the criminal has been convicted and pardoned does not make him more eligible. [Williston, "Does A Pardon Blot Out Guilt?," 28 Harv.L. Rev. 647, 653 (1915).]
This distinction was recognized in Hozer v. Treasury Dep't, 95 N.J. Super. 196, 230 A.2d 508 (App.Div. 1967), in which a police officer convicted of nonfeasance in office had received a full pardon and then applied for his pension. Rejecting the argument that the pardon had restored his pension rights, the court noted the statute requires a policeman seeking a retirement pension to have served honorably. Reviewing the record before the pension fund commission, it was found that its conclusion of failure to satisfy the condition of honorable service was not based automatically on the criminal conviction but upon a review of the proofs which supported the verdict. That record established his dishonorable service apart from the conviction itself, and the pardon did not "obliterate such dishonorable service or wash out the moral stain thereof." Id. at 204, 230 A.2d 508.
While a pardon may restore to a convicted felon his rights of citizenship and remove all penalties and legal disabilities, it cannot and does not substitute a good reputation for one that is bad; it does not obliterate the fact of the commission of the crime; it does not wash out the moral stain; it involves the forgiveness and not forgetfulness and it does not `wipe the slate clean.' (citations omitted) A pardon `does not close the judicial eye to the fact that *640 once he had done an act which constituted the offense.' (citations omitted) It does not restore his character and does not obliterate the act itself. [Id. at 202, 230 A.2d 508.]
Similarly, in In re Application for Pistol Permit, 130 N.J. Super. 21, 324 A.2d 611 (Cty.Ct. 1974), the applicant applied for a permit to carry a pistol following receipt of a full and unconditional presidential pardon of a federal embezzlement conviction. Holding that the pardon removed the disability to receive a permit to carry a weapon, the court nevertheless found the conviction to be prima facie, but rebuttable, evidence that the applicant lacked the good and moral character required by the governing statute.
Some courts in other states have recognized this distinction in relating a pardon to one's eligibility for public office. They, therefore, have found if the disqualification for office is based solely upon the fact of the conviction, which the pardon has removed, one's eligibility to hold office has been restored. But if character is a necessary qualification for the office, then the pardon has not restored eligibility. Annotation, supra, 58 A.L.R.3d at 1199.
In New Jersey, good character has not been made a requirement for holding public office. Eligibility criteria for membership in the State Legislature, for example, deals only with age, citizenship, residency, and entitlement to the right of suffrage. N.J.Const. (1947), Art. IV, § 1, par. 2. It is helpful therefore to consider the concept of suffrage in this context, because of the separate constitutional provision that
[T]he Legislature may pass laws to deprive persons of the right of suffrage who shall be convicted of such crimes as it may designate. Any person so deprived, when pardoned or otherwise restored by law to the right of suffrage, shall again enjoy that right. [N.J.Const. (1947), Art. II, par. 7.]
See generally State v. Musto, 187 N.J. Super. 264, 454 A.2d 449 (Law Div. 1982), aff'd 188 N.J. Super. 106, 456 A.2d 114 (App. Div. 1983).
This constitutional provision has been implemented by various sections of the election law.

*641 Constitutional qualifications; persons not having right of suffrage; right to register.
Except as provided in sections 19:4-2 and 19:4-3 of this Title, every person possessing the qualifications required by Article II, paragraph 3, of the Constitution of the State of New Jersey and having none of the disqualifications hereinafter stated and being duly registered as required by this Title, shall have the right of suffrage and shall be entitled to vote in the polling place assigned to the election district in which he actually resides, and not elsewhere.
No person shall have the right of suffrage  ...
....
(6) Who has been convicted of a violation of any of the provisions of this Title, for which criminal penalties were imposed, if such person was deprived of such right as part of the punishment therefor according to law unless pardoned or restored by law to the right of suffrage; or
(7) Who shall be convicted of the violation of any of the provisions of this Title, for which criminal penalties are imposed, if such person shall be deprived of such right as part of the punishment therefor according to law, unless pardoned or restored by law to the right of suffrage.... [N.J.S.A. 19:4-1.]
The right to hold public office is inexorably intertwined with the right of suffrage. Such has been recognized by case law as well as by the express provisions of the New Jersey Civil Rights Act:
The right of citizens of this State to hold office or employment shall be coextensive with their right to vote, shall be equal as to all citizens and shall not be denied or abridged on account of sex or marital status. Such equal rights and privileges shall extend to all offices, boards, commissions or other public service in the State and its political subdivisions of whatever nature or kind.... [N.J.S.A. 10:1-1.]
Although the right to be a candidate for public office has never been held to enjoy "fundamental" status by either the United States Supreme Court or the New Jersey Supreme Court, Matthews v. Atlantic City, 84 N.J. 153, 161, 417 A.2d 1011 (1980), it remains a "valuable one and its exercise should not be declared prohibited or curtailed except by plain provisions of law." State v. Musto, supra, 187 N.J. Super. at 282, 454 A.2d 449. This relationship between the right to vote and qualification for public office was described by Chief Justice Weintraub:
... [T]he right to vote has taken its place among our great values. Indeed the fact that the voting franchise was hoarded so many years testifies to its exalted *642 position in the real scheme of things. It is the citizen's sword and shield. `Other rights, even the most basic, are illusory if the right to vote is undermined.' ... (citations omitted) It is the keystone of a truly democratic society. And the right to vote would be empty indeed if it did not include the right of choice for whom to vote.... This does not mean there must be perfect equality between the two.... But it does mean that in judging the validity of a restraint upon eligibility for elective office, we must be mindful that the restraint is upon the right to vote as well. As Mr. Chief Justice Warren said in Reynolds v. Sims, supra, 377 U.S. [533] 555, 84 S.Ct. [1362] 1378, 12 L.Ed.2d [506] 523 [(1964)]:
`... The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government.'
....
Far from being unrestricted, the power to prescribe qualifications for elective office is sharply limited by the constitutional guaranty of a right to vote. A prescribed qualification for office must relate to the needs of officeholding as such or the special needs of the particular office involved, with the voters free to judge the personal or individual fitness of the candidates who have those basic qualifications. The line separating the basic needs of office from the individual fitness of a candidate, perhaps more easily felt than described, is vital, and the fundamental value involved is best served if the judiciary insists that the reason for the inroad upon the right to vote be real, and clear, and compelling. [Gangemi v. Rosengard, 44 N.J. 166, 170-171, 207 A.2d 665 (1965).]
Plaintiffs urge that Gregorio is disqualified from seeking office by virtue of N.J.S.A. 2A:167-5, which provides:
Any person who has been convicted of a crime, and by reason thereof has been deprived of the right of suffrage or of any other of his civil rights or privileges, or upon whom there has been imposed a fine or who has suffered a forfeiture, except disqualification to hold and enjoy any public office of honor, profit or trust in this state under judgment of impeachment, may make application for the restoration of the right of suffrage or of such other rights or privileges or for the suspension or remission of any such fine or forfeiture, which application the governor may grant by order signed by him.
This statute has no application to the facts of this case. It addresses executive clemency, not pardons. It precludes one from seeking such clemency if found disqualified from holding public office upon judgment of impeachment. The statute follows the restriction of N.J.Const. (1947), Art. V, § 2, par. 1, but goes no further and does not bar one from seeking a pardon if convicted of a crime other than treason or impeachment. *643 Beyond that, it does not appear there is any other legislative restriction placed on the authority of a Governor to grant full pardon to one who has by conviction been disqualified from seeking public office.
N.J.S.A. 2C:51-2a speaks to the present: one holding public office shall forfeit that office upon conviction of any of the enumerated offenses. N.J.S.A. 2C:51-2c speaks to the future: one convicted of an offense resulting in forfeiture of office is thereafter barred from holding public office. Although the disqualification is stated to be "forever," it cannot be read to mean under all circumstances, for there is no indication here that the Legislature intended it to prevail should the disqualifying conviction later become the subject of a pardon. Indeed, were it to be read so expansively, it could well be said to encroach upon the Governor's constitutional authority to grant pardons.
It should also be noted that under federal law a presidential pardon "will restore all federal civil rights which (are) lost upon criminal conviction, including the right to run for federal office." Bjerkan v. United States, 529 F.2d 125, 127 (7 Cir.1975). A similar result prevailed in Oklahoma, where by constitution no person is eligible for election to the legislature if found guilty of a felony. Okla.Const., Art. V, § 18. Nonetheless, the Supreme Court of Oklahoma has held that a convicted felon receiving a full and unconditional pardon is not precluded thereafter from seeking election to that state's legislature. State ex rel. Cloud v. Election Board of State of Oklahoma, 169 Okl. 363, 36 P.2d 20 (1934).
It, therefore, is my conclusion that although a convicted public official is otherwise disqualified from holding office "forever" by virtue of N.J.S.A. 2C:51-2c, should that official subsequently be granted a full pardon for that conviction, he is not thereafter barred from seeking public office. Despite the language of the statute, the pardon has removed all civil disabilities attendant to the conviction and restored the *644 fundamental right of suffrage. The right to hold office is by statute "coextensive" with the right to vote. A conviction, once pardoned, should not continue to effect disqualification unless explicitly so provided by law. The pardon, exclusively an executive function, is not subject to judicial review, State v. Mangino, 17 N.J. Super. 587, 591, 86 A.2d 425 (App.Div. 1952). Any appeal from the pardon decision lies in the electoral process, the ultimate weapon of a democratic society. It is for the voters, not the courts, to determine whether Gregorio should hold public office again.
For all of these reasons, the order to show cause is discharged and the complaint dismissed for failure to state a cause of action.
NOTES
[1] This is an amplification of an oral bench decision.
[2] For background generally, see State v. Gregorio, 142 N.J. Super. 372, 361 A.2d 586 (Law Div. 1976) and State v. Gregorio, 186 N.J. Super. 138, 451 A.2d 980 (Law Div. 1982).