HAWKINS, Chief Justice,
dissenting:
Because the majority, incorrectly applies the existing law to the facts of this case, depriving the electorate of their choice in an election, I must respectfully dissent.
I.
Robert C. “Bob” Latham is entitled to be a candidate. Latham was qualified as a substitute candidate under Miss.Code Ann. § 23-15-317 (1990 rev.). Like Latham, the majority of the current candidates for the judiciary elections were qualified according to Mississippi law under Miss.Code Ann. § 23-15-971 (1990 rev.). The Secretary of State, in his brief, admits that Latham was a qualified candidate under the law existing in Mississippi until September 6, 1994. Latham complied in every way necessary to qualify as a candidate for this election under existing Mississippi law, just as every other candidate.
However, the majority asserts House Bill 1809 changes everything. One legal problem with applying this legislation is its effective date. House Bill 1809 states:
[T]he remainder of this act [the relevant provisions) shall take effect and be in force from and after the date it is effectuated under Section 5 of the Voting Rights Act of 1965, as amended and extended.
Section 104, House Bill 1809 (1994).
The Justice Department precleared on September 6,1994, House Bill 1809, together with a circuit trial court order of April 1992, which permitted candidates to qualify under both existing state election laws and under the proposed House Bill 1809, which itself was subject to federal preclearance at the time. As a result, the effective date of this new legislation and the circuit court order is September 6, 1994.
This effective date has particular effect considering this Court’s longstanding refusal to retroactively apply new legislation. This Court has stated:
Constitutional amendments and statutory enactments have prospective force only, “unless a contrary intention is manifested *1344 by the clearest and most positive expression.”
State ex rel Moore v. Molpus, 578 So.2d 624, 643 (Miss.1991) (citations omitted).
Application of the circuit court order will force the retrospective application of law against Latham, who qualified under Miss. Code Ann. § 23-15-317, but will appiy prospectively to the other candidates qualifying under Miss.Code Ann. § 23-15-971. The majority apparently concedes that but for the April 28, 1994 judgment of the Madison County Circuit Court, H.B. 1809 would not preclude Latham’s name being placed upon a ballot. According to the majority, it is this order which puts Latham out of the ballpark. It is certainly a novel argument to contend that a court order that could only apply to the individuals involved, made no attempt to extend further to unnamed individuals, and to which Latham was not a party, which could have no more effect than H.B. 1809 until approved, is somehow invested with plenary power to encompass all elections in this state and bar Latham. Judgments bind only parties and privies, and not those “neither party nor privy to the prior action.” Weaver v. City of Pascagoula, 527 So.2d 651, 652 (Miss.1988, see also State ex rel. Attorney General v. Land, 231 Miss. 529, 95 So.2d 764, 770 (Miss.1957) (holding that chancery court’s order concerning primary elections not binding on attorney general, since they were not parties to suit). The Justice Department’s approval merely stated that the court’s injunction was proper as to those parties.
The April 28, 1994 judgment of the Circuit Court of Madison County was simply a judgment affecting certain parties, and those parties alone, and the effectiveness of which, as H.B. 1809, was held in suspension until acted upon by the U.S. Department of Justice. The Justice Department letter of September 6,1994, expressing no objection to the circuit court judgment, simply put it into final effect. The Justice Department letter could not, nor did it attempt to effect some kind of apotheosis of the circuit court judgment — make it something it was not — and binding upon all citizens of Mississippi.
As stated above, this Court favors prospective application of law unless the legislature clearly intends otherwise. State ex rel. Moore v. Molpus, 578 So.2d 624, 643 (Miss.1991). Barring Latham would not only be applying law retrospectively, but inconsistently as well.
Furthermore, many courts have held that courts must resolve every doubt in a candidate’s eligibility in favor of the candidate. Jarnagin v. Harris, 138 Ga.App. 318, 226 S.E.2d 108, 109 (1976), McCarthy v. Streit, 538 N.E.2d 873, 879 (Ill.App.Ct.1989), State of Nevada Employee’s Ass’n v. Lau, 877 P.2d 531, 534 (Nev.1994), Oceanographic Comm’n v. O’Brien, 74 Wash.2d 904, 447 P.2d 707, 712 (1968) (en banc). Even more strongly, at least one court has held that “(a)n individual who has been nominated as required by law has an unqualified right to have his name appear on the ballot as candidate for pubhc office.” Ferguson v. Rohde, 449 S.W.2d 758, 761 (Ky.Ct.App.1970); see also Schumann v. Fleming, 261 Ill.App.3d 1062, 199 Ill.Dee. 497, 501, 634 N.E.2d 336, 340 (Ill.App.Ct.1994), Brezizecki v. Gregorio, 246 N.J.Super. 634, 588 A.2d 453, 456 (Law Div.1990).
The dissenters are unpersuaded by the argument that aU other candidates were qualified under the “new” law and the “old” law, for the new law did not become effective until September 6, 1994. Such a distinction is inconsistent with the idea that laws, unless the legislature states otherwise, are prospectively applied.
Furthermore, other courts have cogently held that the state could only review eligibility and qualifications for properly qualified candidates after that candidate was placed on the ballot, before a judicial determination. Bell v. Foster, 83 N.J.Super. 455, 200 A.2d 354, 356-57 (App.Div.1964). The majority’s decision in essence reverses this process, and puts the cart before the horse.
II.
Such unfairness and unwillingness to apply our caselaw leads to other legal and policy questions. Latham is being singled out for special treatment, although he did all that was necessary under existing law at the time of his qualification as a candidate. Although *1345 arising under a different statute, his candidacy is of no less legal force than any other candidate currently running. As a result, the majority infringes upon due process and equal protection considerations under both state and federal law.
Here we have a candidate which on the day he qualifies for office complies with all statutory requirements. Under the majority’s holding, statutory compliance can be erased by a subsequent substantial change in the law over which Latham had no control. Courts have an obligation to eschew a statutory interpretation that violate the Mississippi or United States Constitution. Chevron, U.S.A., Inc. v. State, 578 So.2d 644, 649 (Miss.1991), Mississippi Tel. Corp. v. Miss. Pub. Serv. Comm’n, 427 So.2d 963, 967 (Miss.1983), State v. Hall, 187 So.2d 861, 863 (Miss.1966). The majority places an interpretation not only upon H.B. 1809, but also the circuit court judgment, which clearly impinges upon Latham’s constitutional rights to equal protection and due process under the Fifth and Fourteenth Amendments to the United States Constitution.
This Court has stated:
(W)e hold that when one files the proper qualifying papers and pays the requisite filing fee to become a candidate for public office, neither the state nor, in the case of a primary election, a political party may-arbitrarily or capriciously deprive him or her of a place on the ballot.
Meeks v. Tallahatchie County, 513 So.2d 563, 565 (Miss.1987).
The Meeks Court cited several federal cases construing the Fourteenth Amendment, and the United States Constitution in general, to state such a deprivation, in primary election cases, implicates state action triggering a federal question in this regard. Meeks, 513 So.2d at 564, citing Smith v. Allwright, 321 U.S. 649, 661-62, 64 S.Ct. 757, 764, 88 L.Ed. 987, 996 (1944). Such state action must be inherently more clear when it is the general election itself in controversy.
III.
Furthermore, the public right to decide an election is a right strongly supported by this Court. Adams County Election Comm’n v. Sanders, 586 So.2d 829, 832 (Miss.1991) (suggesting that denial of electorate’s right to vote offends “basic principles of representative government.”).
Latham is the only substitute candidate in this election. Removing his name from the ballot turns an otherwise contested election into no contest at all.
In addition, the majority ignores the fact that this petition only requested that La-tham’s name be placed on the ballot, pending a more thorough review by this Court. The potential for irreparable injury is necessarily lesser through his inclusion on the ballot. If Latham loses the general election while on the ballot, his appeal is moot. If Latham wins the general election, both parties would have the ability to finally resolve Latham’s qualifications by a proper court. This option is particularly apt given the fourteen month period between this election, and the assumption of office by the winner for deciding that Latham has not lawfully qualified for this office.[1] In contrast, this Court will do La-tham irreparable harm by finally deciding that he has not lawfully qualified for this office. It would be impossible to win such an election by write-in vote.
With such irreparable harm done, the threshold for determining this temporary relief of placing Latham on the ballot, pending a final determination on the ease, is generally less than that of a decision on the merits. See Curtis v. Thompson, 840 F.2d 1291, 1296 (7th Cir.1988) (holding use of sliding scale on determining temporary injunction proper, weighing harm done against likelihood of success on merits); Florida Medical Ass’n, Inc. v. United States Dep’t. of Health, Education & Welfare, 601 F.2d 199, 202, n. 2 (5th Cir.1979). Here, with the harm done being irreparable, a plaintiffs chances need be little more than negligible to succeed with an injunction. Curtis, 840 F.2d at 1296.
*1346 IV.
In conclusion, I acknowledge the majority’s efforts to forge a solution in light of the difficulties posed through application of the Voting Rights Act. The problem that arises is that one cannot force a candidate to qualify under existing and future laws that may never take effect, given the unpredictability of the timing and holding of the Justice Department in Voting Rights Act cases. The majority in its decision forces future applicants not only to follow laws as they are, but laws that never may be. Of far greater import, this is not a case involving a single individual; it impacts on the entire electorate of the Mississippi Supreme Court’s southern district. As all public offices, this office belongs to the people who are now denied a choice, a precious right of suffrage. Accordingly, I respectfully dissent.
PRATHER, P.J., and SMITH, J., join this opinion.

. The candidate for this post runs in the 1994 November general election, but does not take office until January, 1996, for an eight year term.