686 A.2d 789

DEBORAH STORCELLA, PETITIONER–APPELLANT, v. STATE OF NEW JERSEY, DEPARTMENT OF TREASURY, DIVISION OF STATE LOTTERY, RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued December 2, 1996—Decided January 9, 1997.

Before LANDAU and KIMMELMAN, JJ.

*Kendall S. Murphy* argued the cause for appellant (*G. Dallas Dixon*, P.C., attorney; *Mr. Murphy*, on the brief).

*Brian J. Litten*, Deputy Attorney General, argued the cause for respondent (*Peter Verniero*, Attorney General, attorney; *Mary C. Jacobson*, Assistant Attorney General, of counsel; *Mr. Litten*, on the brief).

The opinion of the court was delivered by

KIMMELMAN, J.A.D.

The issue presented on this appeal is whether a gubernatorial pardon for criminal offenses involving moral turpitude must be

deemed to restore the pardoned person's good moral character so as to require licensure as a lottery agent.

Appellant Deborah Storcella, the operator of Storkey's General Store in Trenton, applied to the Division of State Lottery (Lottery) to add to her lottery agent's license Richard J. Storcella (Storcella), her father, as a Key Person. The Executive Director of the Lottery denied the application on January 11, 1996.

Between 1968 and 1974, Storcella was convicted of crimes which included bookmaking, working for an illegal lottery, possession of lottery slips, lottery on premises, conspiracy, bribery, and receipt of stolen property. Storcella was sentenced on all of the convictions and did serve time in prison. Significantly, it appears that all of the aforesaid crimes were committed on or adjacent to the premises of Storkey's General Store and that some crimes were committed subsequent to the legalization in 1970 of the State-run lottery.[1]

By 1990, Storcella, the then owner of Storkey's General Store, had applied for and been denied a lottery license on nine separate occasions. On the last occasion of denial, in 1990, the Lottery acting executive director said:

> It has been the Director's policy not to license convicted gamblers to serve as Lottery agents. This is done to avoid a perception by the public that the taint of illegal gambling is in any way connected with our operations. For this reason, I have decided to uphold the denial of the pending application.

The director pointedly added: "I do not think that it is in the best interest of the Lottery to have a professional gambler as one of our agents...."

Storcella transferred ownership of Storkey's General Store to appellant, his daughter, following the last denial and she then became licensed as a lottery agent. Notwithstanding the transfer,

---

[1] *L.* 1970, *c.* 13, § 1–27 (eff. Feb. 16, 1970).

the record indicates that Storcella remains a principal operator of the business.[2]

On January 14, 1994, Governor Florio pardoned Storcella for the above-listed crimes.[3] A 1968 disorderly persons conviction for receipt of stolen property was not included in Storcella's petition for Executive Clemency and that conviction still remains part of his criminal record.

After the issuance of the pardon, appellant applied to amend her lottery license by adding her father as a Key Person to handle lottery transactions. In denying the application, the executive director said:

> [I]n rendering this final decision I have considered the Pardon and the nature of the criminal activities underlying Mr. Storcella's convictions. I am bound by the duty of my office to find that the need to protect the public perception of the integrity of the Lottery outweighs any evidence of rehabilitation. Mr. Storcella seeks to operate the Lottery on the same premises in which he previously conducted illegal bookmaking operations, worked for an illegal lottery, possessed illegal lottery slips and operated an illegal lottery. The additional criminal activities underlying convictions for conspiracy and bribing a public official directly bear upon Mr. Storcella's moral character and comprise conduct which would be detrimental to the integrity of the Lottery.
>
> . . . .
>
> The Lottery depends upon public trust and an image of integrity and strives for the achievement of an absolutely clean operation in all respects and at all times. Licensed lottery agents are in a position of great importance in this regard because it is they with whom the patrons of the Lottery come in contact.... Mr. Storcella's history of prior illegal gambling, however long ago it was, stains the integrity of the Lottery and it is this stigma that I find objectionable and unacceptable in light of the Lottery's statutory mandate.

---

[2] We do not comment on the transfer of the store to appellant which transfer was evidently effected to facilitate the issuance of a lottery license for the store premises nor upon the removal of Storcella's criminal disqualification by the Director of the Division of Alcoholic Beverage Control on June 29, 1988, which is urged as determinative State action taken in his favor. *See In re Disciplinary Proceedings Against C. Schmidt & Sons, Inc.*, 79 N.J. 344, 399 A.2d 637 (1979).

[3] Storcella's wife, who was indicted and convicted of the same crimes, had not applied for a pardon.

Appellant argues on appeal that the executive director of the Lottery erred because the Lottery was bound to follow section 3 of the Rehabilitated Convicted Offenders Act, *N.J.S.A.* 2A:168A, and to license Storcella.

*N.J.S.A.* 2A:168A–3 provides in pertinent part:

The presentation to a licensing authority of evidence of a pardon . . shall preclude a licensing authority from disqualifying or discriminating against the applicant.

The wording of *N.J.S.A.* 2A:168A–3 does not direct the licensing authority to issue a license upon presentation of a pardon, rather it prohibits a licensing authority from automatically disqualifying an applicant based on the convictions alone. *See, e.g., Kimmelman v. Henkels & McCoy, Inc.,* 108 *N.J.* 123, 128, 527 *A.*2d 1368 (1987) (directing that interpretation of a statute must center upon its structure and plain language). The Legislature has not mandated that a licensing authority totally ignore the criminal activities underlying the pardoned convictions, particularly where those activities have a direct relation to the license being sought.

The Lottery was bound to consider the nature of the activities underlying the crimes committed by Storcella and the impact that licensing someone who had conducted an illegal lottery, especially on the very same premises covered by the license, will have on the public's perception of the integrity of the Lottery. For instance, *N.J.A.C.* 17:20–5.1 provides, in pertinent part, that "[a]n application may be denied . . . by the Director . . . [w]henver it is determined that such action would be in the best interest of the Lottery based on actions which reflect upon the agent's moral character or affect the integrity of the Lottery. . . ."

A pardon is a matter of executive grace. *See N.J. Const.* art. V, § 2, ¶ 1. A pardon relieves the guilty person from the burden of the crimes forgiven so that the legal disabilities attendant upon the convictions are removed. *In re Fitzpatrick,* 9 *N.J.Super.* 511, 519, 75 *A.*2d 636 (Cty.Ct.1950), *aff'd o.b.,* 14 *N.J.Super.* 213, 82 *A.*2d 8 (App.Div.1951); *Brezizecki v. Gregorio,* 246 *N.J.Super.* 634, 638, 588 *A.*2d 453 (Law Div.1990). A par-

doned person is restored to all rights of citizenship, and may vote, and may serve on a jury, *id.* at 638, 641, 588 *A.*2d 453; *see also N.J.S.A.* 2C:51–3, but not all consequences of the conviction are erased by the pardon. *Id.* at 639, 588 *A.*2d 453.

■ In *Hozer v. Treasury Dep't,* 95 *N.J.Super.* 196, 204, 230 *A.*2d 508 (App.Div.), *certif. denied,* 50 *N.J.* 285, 234 *A.*2d 395 (1967), this court determined that a pardon does not obliterate the dishonorable conduct which resulted in the conviction "or wash out the moral stain thereof." In *Hozer,* the pardon of a police officer, convicted of nonfeasance in office, was held not sufficient to restore the officer's retirement pension rights where the statute required the officer to have served honorably. Although *Hozer* was decided seven years before enactment of *N.J.S.A.* 2A:168A–3, *L.* 1974, *c.* 161, *Hozer* is still an accurate statement of the law concerning the effect of a pardon; that a pardon does not erase the facts underlying the criminal conviction, but merely forgives the crime. The Legislature has not seen fit over the intervening years to modify the effect of *Hozer. See Brotherhood of R.R. Trainmen v. Palmer,* 47 *N.J.* 482, 487, 221 *A.*2d 721 (1966).

■ "Ordinarily, we will not reverse the determination of an administrative agency unless it is arbitrary, capricious, or unreasonable or is not supported by substantial credible evidence in the record as a whole." *Dennery v. Board of Educ.,* 131 *N.J.* 626, 641, 622 *A.*2d 858 (1993); *Barry v. Arrow Pontiac, Inc.,* 100 *N.J.* 57, 71, 494 *A.*2d 804 (1985).

■ It was not arbitrary, capricious, or unreasonable for the Lottery Director to conclude that Storcella's past criminal activity in conducting a bookmaking operation on the very premises for which the license is sought adversely reflects upon his moral character and will directly affect the public perception of the integrity of the Lottery. The Director's decision is supported by the record.

Affirmed.