42 A.3d 918 (2012)
426 N.J. Super. 15
In the Matter of Martin CARLUCCIO, Safety Specialist Trainee, DMV (S0599J), Motor Vehicle Commission.
Docket No. A-5219-09T1
Superior Court of New Jersey, Appellate Division.
Argued November 29, 2011.
Decided May 25, 2012.
*920 Arthur Russell argued the cause for appellant Martin Carluccio (Stuart Ball, LLC, attorneys; Mr. Ball and Mr. Russell, on the brief).
Pamela N. Ullman, Deputy Attorney General, argued the cause for respondent Civil Service Commission (Paula T. Dow, Attorney General, attorney; Lewis A. Scheindlin, of counsel; Ms. Ullman, on the brief).
Before Judges MESSANO, ESPINOSA and KENNEDY.
The opinion of the court was delivered by
MESSANO, P.J.A.D.
On July 27, 2009, the Civil Service Commission (the CSC) issued its final administrative action: 1) denying the enforcement request of the Division of State Human Resource Management (SHRM); and 2) denying Martin Carluccio's appeal from the Motor Vehicle Commission's (the MVC) decision to remove his name from a list of eligible candidates based upon an unsatisfactory background investigation.[1] Carluccio subsequently sought reconsideration, and, on June 1, 2010, the CSC denied the request. This appeal followed.

I.
The facts and procedural history are not in dispute. On October 30, 1996, when he was thirty-years old, Carluccio was arrested and charged with aggravated assault and possession of a weapon for an unlawful purpose. On or about August 2, 1998, after pleading guilty to third-degree attempted aggravated assault, he was sentenced to a five-year term of probation. His probation was revoked on March 24, 2000, and Carluccio was sentenced to three years in prison.[2] He remained incarcerated from March 24, 2000 to January 25, 2001, and was on parole supervision from that date until June 10, 2002. The record contains a letter from a senior parole officer, dated November 3, 2004, indicating that Carluccio complied with all conditions of parole, remained arrest-, drug- and alcohol-free, and his overall evaluation was "very good."
Carluccio was among 334 eligible candidates for the position of "Safety Specialist Trainee, DMV" on a civil service list promulgated on November 15, 2007.[3] Carluccio's name appeared on three certifications, one each for Morris, Monmouth and Camden counties. Carluccio was offered the position contingent upon a criminal background check.
On February 13, 2008, the MVC advised Carluccio that he was disqualified based upon information revealed "from th[e] record check." On February 14, the MVC further advised Carluccio that it would "defer any further processing" because of the "criminal conviction that ha[d] not been expunged by a Court," but explained that Carluccio was "not automatically disqualif[ied]... if [he could] affirmatively demonstrate clear and convincing evidence of ... rehabilitation." The MVC indicated it would consider the eight factors contained in N.J.S.A. 39:2A-32(f), and invited Carluccio to respond and submit "any information or evidence of rehabilitation."
In his written response, Carluccio stated that his 1998 conviction resulted from "a *921 domestic incident that [he] allowed to get out of control due to alcohol and immaturity." Carluccio offered as proof of his rehabilitation: a Certificate of Good Conduct issued by the Parole Board in December 2007, recognizing that his employment as a Code Enforcement Official "would not be incompatible with the welfare of society," and a letter from the Parole Board indicating the certificate "may be applied to your proposed employment as a Safety Specialist"; a commercial driver's license with a Hazardous Material Endorsement, along with letters from the federal Transportation Security Administration approving Carluccio's application for the endorsement and its renewal after finding he posed no security threat; a certificate of membership in the Italian-American Police Society of New Jersey; a diploma from the Chubb Institute issued in April 2002; an Inspector's License issued by the MVC for employment by a private contractor, Parsons, that operated motor vehicle inspection stations from 2002 to 2005, and letters of recommendation from a supervisor who worked for the MVC and Carluccio's sister, who was also employed by the MVC; and several letters of recommendation from friends in the law enforcement community. Carluccio cited provisions of the Rehabilitated Convicted Offenders Act, N.J.S.A. 2A:168A-1 to -16 (the RCOA), in further support.
The MVC responded by disqualifying Carluccio from employment "based upon the nature and responsibility of the position of Safety Specialist Trainee ... as its role is to provide direct customer service to the citizens and businesses of the State of New Jersey." The MVC advised it would request Carluccio's name be removed from the certified list "due to the results of [his] criminal history background check."
The MVC submitted its request to SHRM, indicating Carluccio was disqualified "pursuant to [N.J.S.A. 39:2A-32(c)]" based upon his prior criminal history. The MVC further explained, "[h]ad Mr. Carluccio been employed with the MVC at the time of this conviction, he would have had to forfeit his employment pursuant to [N.J.S.A.] 2C:51-2a(1). That being the case, [his] history renders Mr. Carluccio unemployable at the MVC."
Carluccio appealed, and, on May 13, 2008, SHRM notified Carluccio that it denied the MVC's request, his "name remain[ed] active on the eligible list" and his "appeal [wa]s moot." SHRM also notified the MVC that it "ha[d] failed to provide justification as to how [Carluccio's] criminal record adversely relate[d] to a position that involves the inspection of motor vehicles and the administration of the driver's examination." SHRM instructed the MVC to include Carluccio on the three certifications, but the MVC refused. SHRM referred the matter to the CSC for enforcement, and Carluccio filed a direct appeal with the CSC.
Before the CSC, the MVC alleged SHRM "did not address the disqualification of Mr. Carluccio's employment based on N.J.S.A. 39:2A-32." The MVC maintained:
[D]isqualification and rejection of Mr. Carluccio under the provisions of Title 39 [was] justified.... N.J.S.A. 2A:168A-1 and N.J.S.A. 2A:168-2 allow for the disqualification of an individual based on a prior criminal conviction, provided that the disqualification is based upon a law or rule or regulation or a prior conviction that adversely affects the individual[']s employment. Clearly, Title 39 is the statute that allows the [MVC] to disqualify Mr. Carluccio from employment, based on his serious prior criminal conviction that the [MVC] reasonably *922 believes adversely affects his employment.
The MVC asserted that Carluccio's conviction was "`serious,'" occurred when he "was 30 years old," "not young and easily influenced," and, as a Safety Specialist Trainee, Carluccio "w[ould] have constant, daily contact with the customers the [MVC] is charged to serve." The MVC claimed that "Safety Specialists perform road tests for all New Jersey citizens seeking a driver license [and] ... engage in the inspection of school buses and commercial buses." The MVC further noted that it had "gone to great lengths to improve its image, customer service and its security" and "c[ould not] take the chance to have its new found reputation discredited with an employee who was convicted of and served time for a crime that has a foundation in an `assault and/or threat' to another person."
Carluccio filed a response contending that the MVC's "interpretation and application of [T]itle 39 [was] in error." He alleged that "the position ... was in Inspection Services and not in Driver Testing," and he would "not give driving tests" nor be "involved in any way with the driving test process and therefore [would not be] `directly or indirectly involved in the issuance or processing of driver's licenses, identification cards, driving records, or vehicle registrations and titles.'" Carluccio further alleged that "while [he] was employed at Parsons" pursuant to a license issued by the MVC that was "renewed in 2004, 2006, and 2008," he "worked on State property and had constant, extensive contact with customers." Carluccio also argued that the MVC failed to consider the impact of the RCOA.
In its July 27, 2009, decision, the CSC rejected Carluccio's argument that N.J.S.A. 2A:168A-3 "preclude[d]" the MVC from "disqualifying or discriminating" against him in light of his Certificate of Good Conduct and MVC-issued inspector license. The CSC concluded that N.J.S.A. 2A:168A-3 was "normally applied in situations where the agency issues a license or certification so that an individual may engage in a particular type of employment"; thus, the statute did not apply because the MVC "[wa]s acting as a public employer," and "not ... as a licensing agency." The CSC further found that, while pardon or expungement prohibits an appointing authority from rejecting an eligible person based upon a conviction, Carluccio was neither pardoned nor was his conviction expunged.
The CSC additionally found that N.J.S.A. 2A:168A-9 applied, which states that "[a] certificate ... shall be presumptive evidence of ... rehabilitation when considered in regard to public employment...." However, pursuant to N.J.S.A. 2A:168A-7(c), the title of Safety Specialist Trainee was "exempt from being considered `public employment' ... since it is a position that has access to sensitive information that could threaten the public health, welfare, and safety."
The CSC cited the MVC's public responsibilities, including "fraud detection, training and monitoring" that required "[p]roper identification ... at all phases of the licensing and driver testing process" and comparison of "DMV records ... with Social Security Administration records in order to verify the validity of Social Security numbers in [MVC] databases." The CSC specifically noted that "the ability to have access to personal information of customers, including social security numbers, and the responsibility of ensuring the identity of the customers of the MVC, by an individual who ha[d] a conviction and ... spent time in prison [was] particularly troubling." The CSC further determined that "other then [sic] the Certificate of *923 Good Conduct, [Carluccio] failed to provide any information as to his rehabilitation," and hiring Carluccio "would violate the public trust."
Carluccio sought reconsideration and argued that the CSC "relied on incorrect information in determining what the duties of a Safety Specialist Trainee ... were." In support, Carluccio submitted letters from his sister and an MVC supervisor which disputed the actual duties of a Safety Specialist Trainee and claimed that such employees "do not have access to personal data." Carluccio also submitted a certificate issued by the Parole Board in June 2009 (the 2009 certificate) pursuant to N.J.S.A. 2A:168A-8, stating that the Parole Board "[had] been responsible for [his] supervision ... [and had] determined that [Carluccio] ha[d] achieved a degree of rehabilitation to indicate that his engaging ... as a ... Safety Specialist would not pose a substantial risk to public safety, would assist in his successful reintegration and [was] consistent with the public interest." The MVC countered by arguing that "it routinely reassigns employees" and "an employee hired into a unit that does not have access to personal information or responsibility for verifying one's identity has to be prepared and qualified to be reassigned to a unit that does."
On June 1, 2010, the CSC denied Carluccio's request for reconsideration, noting that he "merely reiterate[d] his prior arguments." The CSC concluded that "based on the plain language of N.J.S.A. 2A:168A-7c, ... the position of Safety Specialist Trainee ... would be exempt from being considered `public employment'... since it is a position that has access to sensitive information that could threaten the public health, welfare and safety." The CSC further concluded that even if Carluccio's "initial position did not have access" to such information, "he could be reassigned at any time to a unit that did have access."

II.
Before us, Carluccio generally argues that pursuant to the statutory and regulatory scheme, his prior conviction does not justify disqualification from employment with the MVC. In particular, he contends that the CSC failed to properly consider the factors bearing on disqualification contained in various provisions of the RCOA, N.J.S.A. 11A:4-11 and N.J.S.A. 39:2A-32. Lastly, Carluccio argues his employment would not "violate the public trust."
The CSC contends that the RCOA does not apply and it properly considered the provisions of other applicable statutes. It further argues that its decision should be affirmed because it was not arbitrary, capricious or unreasonable.
We have considered these arguments in light of the record and applicable legal standards. We reverse and remand the matter to the CSC for further proceedings consistent with this opinion.

A.
We note the well-recognized standards that guide our review of agency action. Appellate courts have "a limited role" in the review of administrative agency determinations. In re Stallworth, 208 N.J. 182, 194, 26 A.3d 1059 (2011) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579, 410 A.2d 686 (1980)); In re Carter, 191 N.J. 474, 482, 924 A.2d 525 (2007). "In order to reverse an agency's judgment, an appellate court must find the agency's decision to be `arbitrary, capricious, or unreasonable, or [] not supported by substantial credible evidence in the record as a whole.'" Stallworth, supra, 208 N.J. at 194, 26 A.3d 1059 (alteration in original) (quoting Henry, supra, 81 N.J. at 579-80, *924 410 A.2d 686 (in turn citing Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562, 189 A.2d 712 (1963))).
In general, appellate review is limited to determining:
(1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
[Carter, supra, 191 N.J. at 482-83, 924 A.2d 525 (quoting Mazza v. Bd. of Trs., 143 N.J. 22, 25, 667 A.2d 1052 (1995)).]
"[I]f in reviewing an agency decision an appellate court finds sufficient credible evidence in the record to support the agency's conclusions, that court must uphold those findings even if the court believes that it would have reached a different result." In re Taylor, 158 N.J. 644, 657, 731 A.2d 35 (1999); see also Carter, supra, 191 N.J. at 483, 924 A.2d 525 (noting that a reviewing court "may not substitute its own judgment for the agency's, even though the court might have reached a different result").

B.
In disqualifying Carluccio, the MVC relied upon N.J.S.A. 39:2A-32(c) which provides, in relevant part, that "[i]f ... information from [a] criminal history record background check discloses that a prospective ... employee has a record of criminal history, the commission shall review the information with respect to the type and date of the criminal offense to determine if the person is qualified for employment with the commission." However, N.J.S.A. 39:2A-32(f) provides that "an individual shall not be disqualified from employment ... on the basis of any conviction disclosed by a criminal history record background check ... if the individual has affirmatively demonstrated to the administrator, clear and convincing evidence of the individual's rehabilitation." (Emphasis added). The following factors "shall be considered":
(1) the nature and responsibility of the position which the applicant would hold, has held or currently holds, as the case may be;
(2) the nature and seriousness of the offense;
(3) the circumstances under which the offense occurred;
(4) the date of the offense;
(5) the age of the applicant when the offense was committed;
(6) whether the offense was an isolated or repeated incident;
(7) any social conditions which may have contributed to the offense; and
(8) any evidence of rehabilitation, including good conduct in prison or in the community, counseling or psychiatric treatment received, acquisition of additional academic or vocational schooling, successful participation in correctional work-release programs, or the recommendation of those who have had the applicant under their supervision.

[N.J.S.A. 39:2A-32(f) (emphasis added).]
By enacting the RCOA, "the Legislature has declared that the public interest is advanced `by removing impediments and restrictions upon [convicted offenders'] ability to obtain employment.'" N.J. Tpk. Auth. v. Local 196, I.F.P.T.E., 190 N.J. 283, 301, 920 A.2d 88 (2007) (alteration in original) (quoting N.J.S.A. 2A:168A-1). N.J.S.A. 2A:168A-2 provides:
Notwithstanding the contrary provisions of any law or rule or regulation ..., no *925 State ... department, board, officer or agency, hereinafter referred to as "licensing authority" authorized to pass upon the qualifications of any applicant for a license or certificate of authority or qualification to engage in the practice of a profession or business or for admission to an examination to qualify for such a license or certificate may disqualify or discriminate against an applicant for a license or certificate or an application for admission to a qualifying examination on the grounds that the applicant has been convicted of a crime, ... except that a licensing authority may disqualify or discriminate against an applicant for a license or certificate if [N.J.S.A.] 2C:51-2 ... is applicable, or if a conviction for a crime relates adversely to the occupation, trade, vocation, profession or business for which the license or certificate is sought. In determining that a conviction for a crime relates adversely to the occupation, trade, vocation, profession or business, the licensing authority shall explain in writing how the following factors, or any other factors, relate to the license or certificate sought:
a. The nature and duties of the occupation, trade, vocation, profession or business, a license or certificate for which the person is applying;
b. Nature and seriousness of the crime;
c. Circumstances under which the crime occurred;
d. Date of the crime;
e. Age of the person when the crime was committed;
f. Whether the crime was an isolated or repeated incident;
g. Social conditions which may have contributed to the crime;
h. Any evidence of rehabilitation, including good conduct in prison or in the community, counseling or psychiatric treatment received, acquisition of additional academic or vocational schooling, successful participation in correctional work-release programs, or the recommendation of persons who have or have had the applicant under their supervision.
Pursuant to N.J.S.A. 2A:168A-3, "[t]he presentation to a licensing authority of evidence of a pardon or of the expungement of a criminal conviction, ... or of a certificate of the ... State Parole Board... that the applicant has achieved a degree of rehabilitation indicating that his engaging in the proposed employment would not be incompatible with the welfare of society shall preclude a licensing authority from disqualifying or discriminating against the applicant."
As noted, the CSC concluded that N.J.S.A. 2A:168A-3 was "normally applied in situations where the agency issues a license or certification so that an individual may engage in a particular type of employment." It held that the statute did not apply because the MVC "[wa]s acting as a public employer," and "not ... as a licensing agency." Carluccio argues this was error. For the reasons cited below, we need not address this discrete issue.
It is true that the few reported cases interpreting the RCOA have done so in the context of applications for specific vocational licenses. See Maietta v. N.J. Racing Comm'n, 93 N.J. 1, 459 A.2d 295 (1983) (application for a groom's license); In re C. Schmidt & Sons, Inc., 79 N.J. 344, 399 A.2d 637 (1979) (determining that the RCOA did not apply to licenses issued under the Alcoholic Beverage Control Act, N.J.S.A. 33:1-1 to -97); Storcella v. Dept. of Treasury, Div. of State Lottery, 296 N.J.Super. 238, 243, 686 A.2d 789 (App. Div.), certif. denied, 149 N.J. 141, 693 A.2d 110 (1997) (Lottery Commission license); *926 Bevacqua v. Renna, 213 N.J.Super. 554, 517 A.2d 1215 (App.Div.1986) (application for a license as an electrical subcode official and inspector).
Since those cases were decided, however, the Legislature significantly broadened the reach of the RCOA by enacting L. 2007, c. 327, § 1-10 (eff. date Aug. 1, 2008), now codified as N.J.S.A. 2A:168A-7 to -16. No reported case has interpreted these new provisions of the RCOA.
In pertinent part, the amendments provided:
a. Notwithstanding any law to the contrary, a certificate may be issued in accordance with the provisions of this act that suspends certain disabilities, forfeitures or bars to employment or professional licensure or certification that apply to persons convicted of criminal offenses.
b. A certificate issued pursuant to this act shall have the effect of relieving disabilities, forfeitures or bars, except those established or required by federal law, to:

(1) public employment, as defined in this section....
[N.J.S.A. 2A:168A-7(a) and (b)(1) (emphasis added) (footnote omitted).]
The Parole Board is a "supervising authority," N.J.S.A. 2A:168A-7(c)(3), authorized to issue such a certificate "to a qualified offender." N.J.S.A. 2A:168A-8(b)(1) and (d)(1).[4] Such a certificate "may suspend disabilities, forfeitures and bars generally within the limits of [the RCOA], or only certain disabilities, forfeitures and bars, specifically named in the certificate document." N.J.S.A. 2A:168A-8(b)(2) and (d)(2).
The issuance of a certification by the Parole Board has other implications. N.J.S.A. 2A:168A-9 provides in pertinent part:
A certificate issued pursuant to [N.J.S.A. 2A:168A-7] shall be presumptive evidence of the subject's rehabilitation when considered in regard to public employment as defined in this act, or in conjunction with any licensing, or certification process to which this act applies, which in any particular case may or may not be overcome by other evidence or information. A certificate granted under this act shall not prevent any judicial, administrative, licensing or other body, board, authority or public official from relying on grounds other than the fact of the criminal conviction in exercising any discretionary authority, if any, to suspend, revoke, refuse to issue or refuse to renew any license, permit or other authority or privilege or to determine eligibility or suitability for employment.

[Ibid. (emphasis added).]
The plain language of these amendments to the RCOA extended the statute's reach to "public employment" opportunities. Compare N.J.S.A. 2A:168A-7 (extending RCOA to "public employment") with N.J.S.A. 2A:168A-12 (exempting "private employers" from the RCOA). The Legislature's intent is further evidenced by the legislative history that accompanied passage.
The bill specifically prohibits the denial of ... employment to applicants who have previously been convicted of a crime because of the conviction or because of a finding of lack of "good moral character" based on the conviction.... *927 [Sponsor's Statement to A. 3623 (Oct. 23, 2006) (emphasis added).]
Therefore, "[n]otwithstanding any law to the contrary," N.J.S.A. 2A:168A-7(a), a certificate issued pursuant to N.J.S.A. 2A:168A-8, not N.J.S.A. 2A:168A-3, is the legislatively-chosen mechanism to "reliev[e] disabilities, forfeitures or bars" to public employment arising from certain prior criminal convictions. In this case, the Parole Board's 2009 certificate, furnished in support of Carluccio's motion for reconsideration, presumptively demonstrated his rehabilitation for purposes of seeking public employment and relieved him of any "disabilities, forfeitures [and] bars" resulting from his 1998 conviction.
However, that does not end our inquiry. The CSC determined that the position of Safety Specialist Trainee was not "public employment," and, therefore, the RCOA did not apply. Although the Legislature effectively extended the RCOA beyond its original purposes, the expansion was not without limits. Specifically, the Legislature carefully defined "public employment" as
employment by a State, county, or municipal agency, but shall not include elected office, or employment in law enforcement, corrections, the judiciary, in a position related to homeland security or emergency management, or any position that has access to sensitive information that could threaten the public health, welfare, or safety.

[N.J.S.A. 2A:168A-7(c)(1) (emphasis added).]
Therefore, the beneficial effects of a certificate issued pursuant to N.J.S.A. 2A:168A-8 do not inure to public employment opportunities "in law enforcement" or "any position that has access to sensitive information that could threaten the public health, welfare or safety."
In this case, without reference to N.J.S.A. 2A:168A-7(c)(1), the CSC determined "that a Safety Specialist Trainee is not a law enforcement title." When originally enacted in 1968, the RCOA did not exempt law enforcement agencies from its purview. However, in 1974, the Legislature adopted N.J.S.A. 2A:168A-6 that expressly exempts "any law enforcement agency." Ibid.; see also In re C. Schmidt & Sons, Inc., supra, 79 N.J. at 354, 399 A.2d 637 (holding the law enforcement exemption applies to the Division of Alcoholic Beverage Control); but see Maietta, supra, 93 N.J. at 7, 459 A.2d 295 (holding the exemption does not apply to the Racing Commission). Because the issue is not squarely before us, we do not consider whether employees of the MVC are "in law enforcement" as that term is used in N.J.S.A. 2A:168A-7(c)(1). However, referencing the potential duties included in the job description, and concluding that the position of Safety Specialist provided "access to sensitive information that could threaten the public health, welfare and safety[,]" the CSC concluded the position was not "public employment," as defined by N.J.S.A. 2A:168A-7(c)(1), to which the RCOA applied.
The 2009 certificate specifically stated that the Parole Board was acting "in accordance with the provisions of N.J.S.A. 2A:168A-7" when it determined Carluccio's "proposed employment, as a ... Safety Specialist would not pose a substantial risk to public safety ... and [was] consistent with the public interest." In a letter that preceded receipt of the certificate, the supervisor of the Parole Board's "Executive Clemency Unit" advised Carluccio that after consideration of his application by the "full Board," it was "determined that" "[his] proposed employment as a ... Safety Specialist ... [did] not pose a substantial risk to the public.... [T]he certificate would assist [Carluccio] with *928 successful reintegration and [was] consistent with [the] public interest."
N.J.S.A. 2A:168A-16 authorizes the Parole Board to adopt regulations implementing the RCOA. The Parole Board regulations became effective on January 20, 2009. See 41 N.J.R. 618(a). These regulations are now codified as N.J.A.C. 10A:71-9.1 to -9.8, and essentially track the language of the RCOA. Specifically, N.J.A.C. 10A:71-9.2 defines "public employment" in identical language to the statute, thus, providing no elucidation of the phrase "any position that has access to sensitive information that could threaten the public health, welfare, or safety," the critical exemption from the RCOA's definition of "public employment" at issue here.
N.J.S.A. 11A:4-4(a) authorizes the CSC to establish the list of eligibles for a job title. The Legislature has delegated to the CSC the authority to "render the final administrative decision" on a variety of appeals, and to "[i]nterpret the application of [the Civil Service Act] to any public body or entity." N.J.S.A. 11A:2-6(a), (b), and (e).
In deciding the SHRM's enforcement request and Carluccio's appeal, the CSC "had the right and the duty to interpret and apply the [RCOA] to the dispute before it." In the Matter of Allen, 262 N.J.Super. 438, 444, 621 A.2d 87 (App.Div. 1993). However, "general agency principles provide that administrative actions cannot alter the terms of any statute, nor can they violate legislative policies." Oches v. Twp. of Middletown Police Dep't, 155 N.J. 1, 27-28, 713 A.2d 993 (1998) (Garibaldi, J., dissenting).
In considering whether Carluccio's potential employment as a Safety Specialist was "public employment" under the RCOA, the CSC was required to recognize that the Legislature delegated to the Parole Board implementation of the 2008 amendments to the RCOA. It is axiomatic that the Parole Board's interpretation of the statute was entitled to some deference. See, e.g., Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J.Super. 52, 56, 766 A.2d 312 (App.Div.2001) (noting that our standard of review requires that we "ordinarily" defer to the "`interpretation of statutes and regulations within [an agency's] implementing and enforcing responsibility'") (quoting In re Appeal by Progressive Cas. Ins. Co., 307 N.J.Super. 93, 102, 704 A.2d 562 (App.Div.1997)).
In issuing the 2009 certificate, the Parole Board concluded that "[n]otwithstanding any law to the contrary," N.J.S.A. 2A:168A-7(a), Carluccio was "reliev[ed] [of] disabilities, forfeitures or bars ... to... public employment" occasioned by his criminal conviction. N.J.S.A. 2A:168-7(b)(1). By specifically referencing the job title in question, we assume the Parole Board concluded the position of Safety Specialist was "public employment." N.J.S.A. 2A:168A-7(c). Further, the certificate was "presumptive evidence of [Carluccio's] rehabilitation." N.J.S.A. 2A:168A-9.
To be sure, this presumption "may or may not be overcome by other evidence or information" "in any particular case." N.J.S.A. 2A:168-9; see also Storcella, supra, 296 N.J.Super. at 243, 686 A.2d 789 (noting that despite the broad language of N.J.S.A. 2A:168A-3, the Lottery Commission could "consider the nature of the activities underlying the crimes committed... and the impact that licensing someone who had conducted an illegal lottery, especially on the very same premises covered by the license, will have on the public's perception of the integrity of the Lottery"). Additionally, "grounds other than the fact of the criminal conviction" may inform the appointing agency's exercise of its "discretionary authority." Ibid. However, *929 in the first instance, the 2009 certificate specific to the title in question established that Carluccio's conviction did not disqualify him from eligibility for the position, "[n]otwithstanding any other law to the contrary." N.J.S.A. 2A:168A-7.
In its decision denying Carluccio's appeal and his motion for reconsideration, the CSC did not reference the above-cited regulations or the preeminent role the Legislature assigned to the Parole Board in implementing the amendments to the RCOA. Because we are not confident that the CSC properly considered the effect of the amendments to the RCOA and the Parole Board's issuance of the 2009 certification in reaching its decision, we are constrained to remand the matter for further proceedings consistent with this opinion.
The appellate record does not contain the job description for the position of Safety Specialist Trainee, although the MVC, the CSC and Carluccio referenced various portions of it in their submissions that were part of the record below. We cannot discern whether the Parole Board was supplied with the actual job description when it issued the 2009 certificate. The appellate record only contains the certificate and letters the Board sent to Carluccio announcing its determination and enclosing the certificate. On remand, the CSC may permit the MVC to submit the entire job description to the Parole Board for consideration and determination as to whether the position of Safety Specialist MVC provides "access to sensitive information that could threaten the public health, welfare, or safety." N.J.S.A. 2A:168A-7(c)(1). The CSC may consider the Parole Board's response on remand.
Reversed and remanded. We do not retain jurisdiction.
NOTES
[1] The SHRM is now the Division of State and Local Operations.
[2] The record does not contain the grounds upon which Carluccio's probation was violated.
[3] The MVC was formerly known as the Division of Motor Vehicles (DMV).
[4] N.J.S.A. 2A:168A-8(c) precludes the issuance of a certification to certain offenders. The exclusions are not relevant to this appeal.