848 A.2d 899

IN THE MATTER OF THE PETITION OF L.B. (FORMERLY KNOWN AS L.T.) FOR EXPUNGEMENT OF CRIMINAL RECORDS.

Superior Court of New Jersey
Law Division Hunterdon County

Decided February 2, 2004.

*Anthony P. Kearns, III, Rylak & Gianos,* for Petitioner.

*J. Patrick Barnes,* Hunterdon County Prosecutor, for the State. (*Dawn M. Solari,* Assistant Prosecutor, on the brief).

ASHRAFI, J.S.C.

The issue in this case is whether a pardon granted by the Governor permits expungement of a criminal record that would otherwise be barred by statute. In the absence of a statute that says it does not, this court concludes that the pardon permits expungement.

Petitioner L.B. seeks expungement of the records of her arrest and conviction for a serious drug offense in 1987 when she was nineteen years old. According to petitioner, she committed the crime by providing a ride to someone to buy cocaine in New York in exchange for receiving some cocaine for her own use. Since the time of her conviction, petitioner has led a law-abiding and admirable life. The State objects to her petition to expunge her criminal record, citing ineligibility under the expungement statute.

## I. Factual and Procedural Background

In February 1988, a grand jury indicted petitioner, then known by her maiden name, for violations of *N.J.S.A.* 2C:35–10(a)(1), possession of cocaine, a third degree offense, and of *N.J.S.A.* 2C:35–5(a)(1) and 2C:35–5(b)(2), possession of cocaine with intent to distribute, a second degree offense because of the quantity of cocaine. Under a plea agreement, petitioner pleaded guilty to possession of cocaine with intent to distribute as down-graded to a third degree offense. She was sentenced in June 1988 to two

years of probation without any period of incarceration but with mandatory money penalties applicable to a drug offense and a six-month suspension of her driver's license.

In June 1991, petitioner was discharged from probation having complied with all its conditions and having met all financial obligations. Since then petitioner has not been arrested or charged again with any offense. She has never previously been granted expungement of any criminal record.

On January 30, 2001, Governor Christine Todd Whitman granted petitioner a pardon for the 1988 drug conviction. The pardon states:

I, Christine Todd Whitman, Governor of the State of New Jersey, by virtue of the authority conferred upon me by the Constitution of New Jersey and the statutes of this State in such case made and provided, do hereby grant to the said [L.T.], a full and free Pardon for the aforesaid crime, and this order is applicable solely to said conviction, and to no other.

On April 14, 2003, petitioner filed this petition for expungement.

Petitioner explains that her arrest and conviction were the results of drug addiction as a teenager and her acquaintance with an older man who was a drug dealer. She says that she drove the man to New York for the purpose of buying cocaine and that in exchange she was given some free cocaine. She claims that she did not herself sell or distribute the drugs, but was arrested in connection with a sting operation aimed at her acquaintance.

Petitioner documents a successful change of lifestyle in the fifteen years since her arrest and conviction. Immediately after her arrest, she entered and successfully completed drug rehabilitation programs. She says proudly now that she has been sober and clean for fifteen years. She graduated from Raritan Valley Community College and Rider University, being named on the dean's list for academic achievement. She has maintained stable employment, including her current position as an accountant. She has an impressive record of volunteer work in substance-abuse centers and other settings. She has attached to her petition a number of laudatory letters from drug counselors, government officials, employers, neighbors, friends, and others attesting to her

achievements and good character. At the age of thirty-five, she can point back to an exemplary life as an adult.

Petitioner desires expungement so that her criminal records will no longer inhibit her career development or her aspirations to adopt a child.

The State does not argue that any facts presented by petitioner are inaccurate or that it has any particular need to maintain her criminal record. The State says simply that, under *N.J.S.A.* 2C:52–2(c) and 2C:52–14(a), her conviction for possession of cocaine with intent to distribute is ineligible for expungement.

## II.  Legal Discussion and Conclusions

### A.  The Statutes

The expungement statute at issue here, *N.J.S.A.* 2C:52–2(a), states in pertinent part:

> In all cases, except as herein provided, wherein a person has been convicted of a crime under the laws of this State and who has not been convicted of any prior or subsequent crime ... may, after the expiration of a period of 10 years from the date of his conviction, payment of fine, satisfactory completion of probation or parole, or release from incarceration, whichever is later, present a duly verified petition praying that such conviction and all records and information pertaining thereto be expunged.

The relevant exception, *N.J.S.A.* 2C:52–2(c), provides:

> In the case of conviction for the sale or distribution of a controlled dangerous substance or possession thereof with intent to sell, expungement shall be denied except where the crimes relate to:
>
> (1) Marijuana, where the total quantity sold, distributed or possessed with intent to sell was 25 grams or less, or
>
> (2) Hashish, where the total quantity sold, distributed or possessed with intent to sell was five grams or less.

### B.  Application of the Statutes to Petitioner's Crime

■ Petitioner herself did not possess cocaine with intent to sell it, but only received and possessed cocaine for her own use. Nevertheless, she was charged with and pleaded guilty to the crime of possession with intent to distribute as an accomplice, or aider and abettor, of the man who was the drug dealer.

Recently, in another case, the Appellate Division addressed the statutory bar to expungement in the context of accomplice liability. The facts of that case, *In re D.A.C.*, 337 *N.J.Super.* 493, 767 *A.*2d 976 (App.Div.2001), resemble L.B.'s petition here. In *D.A.C.*, the petitioner had pleaded guilty in 1981, when twenty-three years old, to the charge of distribution of LSD. He was sentenced to a two-year term of probation. Nearly twenty years later, he filed a petition for expungement and claimed to have successfully changed his lifestyle, attained a college degree, and secured consistent employment in the time since his conviction. The trial court denied his petition to expunge because of the statutory bar for serious drug offenses. On appeal, he argued that his role in the offense was merely that of an accomplice and that the statute only prohibits expungement when one is convicted of committing the crime as a principal, the person who actually distributes or intends to sell the drugs. The Appellate Division rejected the argument, holding that the statutory bar applies as well to those convicted of aiding and abetting the possession of drugs with intent to sell.

The petitioner in *D.A.C.* also argued that expungement should be granted on the basis of a certain earlier unpublished Appellate Division decision. In response, the court said:

> Petitioner urges that expungement should be granted on the authority of our unreported opinion in *State v. Eccleston,* (A–2653–98T2) (App.Div.1999), where we affirmed an order granting expungement. *Eccleston,* however, presents no basis for expunging petitioner's offense. As noted, *N.J.S.A.* 2C:52–2c prohibits expungement of a "conviction for the sale or distribution of a controlled dangerous substance or possession thereof with intent to sell ...." The offense whose expungement we affirmed in *Eccleston,* however, was possession with intent to distribute, not possession with intent to sell, and thus it was not identical to the crimes defined in *N.J.S.A.* 2C:52–2c. By contrast, petitioner's crime, distribution of CDS, is specifically listed in that provision as one of the crimes whose expungement the Legislature has forbidden.
>
> [*D.A.C.*, 337 *N.J.Super.* at 497–98, 767 *A.*2d at 979 (emphasis added).]

In the highlighted language quoted above, the court seems to say that the Legislature only barred expungement when the crime is possession with intent to sell, not possession with intent to distribute in the complete legal definition of that term.

The distinction between intent to distribute and intent to sell reflects the broad definition of "distribution" under the provisions of the Criminal Code. *See N.J.S.A.* 2C:35–2 (definitions of "distribute" and "deliver"). Sharing drugs without selling them is still distribution under cases that have construed the meaning of that term. *See, e.g., State v. Roach,* 222 *N.J.Super.* 122, 127, 536 *A.*2d 282, 285 (App.Div.1987), *certif. denied,* 110 *N.J.* 317, 540 *A.*2d 1293 (1988); *State in the Interest of A.J.,* 232 *N.J.Super.* 274, 285–87, 556 *A.*2d 1283, 1289–91 (App.Div.1989). Thus in *D.A.C.,* the Appellate Division appears to have concluded that conviction of possession with intent to distribute drugs in the sense of sharing with others can be expunged while possession with intent to sell the drugs cannot.

Counsel for L.B. attempts to apply literally the language of *D.A.C.* quoted above to argue that petitioner is not barred from seeking expungement because she, too, was convicted of possession with intent to distribute and not the actual distribution of cocaine. But that reading of *D.A.C.* goes beyond the holding of the Appellate Division, and it would eviscerate part of the expungement statute. All convictions for possession with intent to distribute are not outside the terms of *N.J.S.A.* 2C:52–2(c) and therefore eligible for expungement. Although the expungement statute refers to the crime of possession with intent to sell, there is no separate provision under the Criminal Code for an offense by that designation. The crime is possession with intent to distribute. Consequently, for the statutory bar for expungements to have meaning, it must apply at least to any conviction for possession with intent to distribute where the facts show that the intent was to sell the drugs, rather than to share them or distribute without selling them.

In this case, petitioner does not claim that the cocaine her male acquaintance obtained in New York was intended for any purpose other than for sale. Indeed, she identifies him as a drug dealer, thus implying sale of the drugs. Consequently, she was convicted

as an accomplice to the crime of possession of cocaine with intent to sell it.

Neither petitioner's role as an accomplice rather than a principal, nor an intent to distribute but not to sell, removes this case from the bar to expungement established in *N.J.S.A.* 2C:52-2(c).

## C. The Effect of the Pardon

■ The issue is whether the Governor's pardon removes the statutory bar and allows petitioner to seek expungement. This court concludes that it does.

This court has not found a New Jersey case that addresses the effect of a pardon on a petition for expungement, but there are relevant statutes and case law from New Jersey and other jurisdictions that provide guidance.

The only case found to address directly the effect of an executive pardon upon the expungement of court records arose in federal court. In *United States v. Noonan,* 906 *F.*2d 952 (3rd Cir.1990), the United States Court of Appeals for the Third Circuit held that a person convicted of violating the Selective Service Act was not entitled to expunction [1] of all court records related to his conviction upon receiving a presidential pardon. In that case, Gregory Noonan was convicted in 1969 of illegally resisting the draft by refusing to be inducted into the military. He was sentenced to three years in prison. In 1977, President Carter issued a proclamation, pursuant to powers under Article II, Section 2 of the United States Constitution, fully and completely pardoning all persons convicted under the Selective Service Act during the relevant time period, and "restoring to them full political, civil and other rights." *Id.* at 953. In 1988, Noonan moved to expunge records of his conviction. Essentially, Noonan requested an expunction order that would enable him to conduct his affairs as if the conviction had never occurred. The District

---

[1] The word "expungement" in the New Jersey statute means the same as the word "expunction" used in the federal decision.

Court granted the motion, ruling that the Presidential pardon entitled Noonan to expunction of his criminal record. The Court of Appeals reversed.

The Court of Appeals addressed the question of whether the pardon's language entitled Noonan to expunction. It noted that expunction under federal law is an "extraordinary remedy" that is not automatically granted even for acquittals or convictions overturned on constitutional grounds. It rejected Noonan's reliance on language from *Ex Parte Garland,* 71 *U.S.* (4 Wall.) 333, 380, 18 *L.Ed.* 366 (1866), that a pardon "blots out the existence of guilt." Instead, it agreed with an analytical distinction described by Professor Williston in 1915:

> The true line of distinction seems to be this: The pardon removes all legal punishment for the offense. Therefore if the mere conviction involves certain disqualifications which would not follow from the commission of the crime without conviction, the pardon removes such disqualifications. On the other hand, if character is a necessary qualification and the commission of the crime would disqualify even though there had been no criminal prosecution for the crime, the fact that the criminal has been convicted and pardoned does not make him more eligible.
>
> [*Noonan, supra,* 906 *F.*2d at 958 (*quoting Bjerkan v. United States,* 529 *F.*2d 125, 128 n. 2 (7th Cir.1975) (*quoting* Williston, *Does a Pardon Blot Out Guilt?,* 28 Harv. L. Rev. 647, 653 (1915))).]

The court in *Noonan* said further:

> Thus, the fact of conviction after a pardon cannot be taken into account in subsequent proceedings. However, the fact of the commission of the crime may be considered. Therefore, although the effects of the commission of the offense linger after a pardon, the effects of the conviction are all but wiped out.
>
> [*Id.,* at 958–59 (*quoting Bjerkan v. United States,* 529 *F.*2d at 128 n. 2).]

Ultimately, the court's focus was not on whether a pardoned person could obtain an expunction order, but only on whether the presidential pardon by itself entitled him to expunction. *Id.* at 955. The court concluded that the presidential pardon did not "create any factual fiction" that the crime or conviction had not occurred to justify expunction of Noonan's criminal record. *Id.* at 960.

The law of expungement in New Jersey, however, is significantly different from the federal law that the Third Circuit Court of

Appeals was applying. The federal court considered the discretionary authority of the judicial branch to expunge a criminal record under the common law. The federal court was not applying a statute providing for expungement. It viewed expungement as "an extraordinary remedy" that should be granted only upon a showing of "extreme circumstances." *Id.* at 956–57.

In contrast, expungement is a statutory remedy in New Jersey that is routinely granted where the requirements of the statute have been satisfied. The statute provides a remedy that is generally applicable by its own terms "in all cases, except herein provided." *N.J.S.A.* 2C:52–2(a). The statute itself sets forth grounds for denial. *N.J.S.A.* 2C:52–14. Where expungement is otherwise available by the terms of the statute, the State has the burden of showing by a preponderance of the evidence that it should *not* be granted. *State v. XYZ Corp.,* 119 *N.J.* 416, 422–23, 575 *A.*2d 423, 426–27 (1990). A petitioner who satisfies the requirements of the expungement statute is presumptively entitled to the remedy unless the State meets its burden of establishing a ground for denial. *In re J.N.G.,* 244 *N.J.Super.* 605, 610, 583 *A.*2d 364, 366 (App.Div.1990). Consequently, expungement is presumptively available to a petitioner under the New Jersey statute without showing "extraordinary" or "extreme circumstances."

In this case, petitioner has gone far beyond the presumption of the statute. She has clearly shown that she is a deserving applicant. The purpose of the expungement statute is to give a one-time offender a second chance, so that she can carry on her life as if criminal proceedings had never occurred. *See N.J.S.A.* 2C:52–27; *State v. N.W.,* 329 *N.J.Super.,* 326, 333, 747 A.2d 819, 823 (App.Div.2000); *State v. Zemak,* 304 *N.J.Super.* 381, 384, 700 *A.*2d 1237, 1238 (Law Div.1997). The State's only objection to this petition is that the statutory bar prohibits it. Petitioner's response is that the pardon overcomes the bar.

Several New Jersey cases have addressed the effect of a pardon with respect to other rights and privileges. In *Storcella v. State, Dep't. of Treasury,* 296 *N.J.Super.* 238, 686 *A.*2d 789 (App.Div.),

*certif. denied,* 149 *N.J.* 141, 693 *A.*2d 110 (1997), the Appellate Division considered a statute by which the Legislature has expressly addressed the effect of a pardon on eligibility for a professional or business license. Under the Rehabilitated Convicted Offenders Act, *N.J.S.A.* 2A:168A–1 to –6, the Legislature restricted the circumstances under which a State licensing authority can withhold issuance of a license because of a person's conviction. One section of the Act, *N.J.S.A.* 2A:168A–3, states that a pardon "shall preclude a licensing authority from disqualifying or discriminating against the applicant." In *Storcella,* the appellant argued that the quoted section required the licensing authority to issue a license to a convicted offender who presents evidence of a pardon. The Appellate Division disagreed, holding that the statute did not mean that the petitioner's pardon for gambling and other criminal offenses automatically restored good moral character. Consequently, the Executive Director of the State Lottery was not required to issue a lottery license to him. The court held that the statute does not direct the licensing authority to issue a license to a pardoned person, but rather prohibits it from automatically disqualifying the applicant based on the conviction alone. *Storcella, supra,* 296 *N.J.Super.* at 243, 686 *A.*2d at 791–92. The court described the nature of a pardon, saying:

> A pardon is a matter of executive grace. A pardon relieves the guilty person from the burden of the crimes forgiven so that the legal disabilities attendant upon the convictions are removed. A pardoned person is restored to all rights of citizenship, and may vote, and may serve on a jury, but not all consequences of the conviction are erased by the pardon.
>
> [*Id.* at 243–44, 686 *A.*2d at 792 (citations omitted).]

The court went on to cite *Hozer v. State, Dep't of Treasury,* 95 *N.J.Super.* 196, 204, 230 *A.*2d 508, 513 (App.Div.1967), in which the Appellate Division had held that a pardon does not obliterate the dishonorable conduct resulting in the conviction "or wash out the moral stain thereof." Thus in *Hozer,* the Appellate Division had determined that a police officer convicted of protecting a bookmaking operation and later pardoned could be denied his pension because he had not met the condition of "honorable service"

contained in the pension statute. Following the same reasoning, the court in *Storcella* concluded that "a pardon does not erase the facts underlying the criminal conviction, but merely forgives the crime." *Storcella, supra,* 296 *N.J.Super.* at 244, 686 *A.*2d at 792.

In *Brezizecki v. Gregorio,* 246 *N.J.Super.* 634, 588 *A.*2d 453 (Law Div.1990), registered voters challenged the candidacy of John Gregorio for mayor of Linden, New Jersey. In 1982, Gregorio had been convicted of a second degree conspiracy with respect to offenses related to his prior terms as mayor, and he had been removed from that office and from his office as a State senator. In 1990, Governor Thomas H. Kean granted Gregorio a full pardon. He sought to enter the Democratic primary to be nominated and elected again as mayor of Linden.

The plaintiff-voters argued that Gregorio was prohibited from holding public office by *N.J.S.A.* 2C:51–2(c) (now designated 2C:51–2(d)), which provides:

> In addition to the punishment prescribed for the offense, and the forfeiture set forth in 2C:51–2a, any person convicted of an offense involving or touching on his public office, position or employment shall be *forever* disqualified from holding any office or position of honor, trust or profit under this State or any of its administrative or political subdivisions. (Emphasis added).

Rejecting the voters' argument, the court held that the Governor's pardon restored Gregorio's right to seek election. The court first noted that pardon is a power bestowed upon the Governor by the New Jersey Constitution, Article V, Section 2. The court then explained that while the pardon does not remove all consequences of the crime, especially when an offender seeks citizenship, professional license, or a position in law enforcement, it does remove the "legal disabilities attendant to the conviction." The court adopted the Williston formulation quoted earlier in the discussion of the *Noonan* case. It distinguished between the effect of the pardon on disabilities caused by the fact of conviction and the disabilities caused by the fact of having committed the crime. While the pardon does not change the fact that the individual committed the crime, it does supersede the fact that he was convicted of the crime. Therefore, if the conviction itself causes the disqualifica-

tion, as opposed to the moral character of the petitioner for having committed the crime, the pardon erases the disability. *Brezizecki, supra,* 246 *N.J.Super.* at 639, 588 *A.*2d at 456.

With respect to the disqualification statute at issue in that case, *N.J.S.A.* 2C:51–2(c), the court said:

although the disqualification is stated to be 'forever,' it cannot be read to mean under all circumstances, for there is no indication here that the Legislature intended it to prevail should the disqualifying conviction later become the subject of a pardon. Indeed, were it to be read so expansively, it could well be said to encroach upon the Governor's constitutional authority to grant pardons.

[*Brezizecki, supra,* 246 *N.J.Super.* at 643, 588 *A.*2d at 458.]

Thus, the court permitted Mayor Gregorio to seek and win election again in Linden.

Similarly, in *In re Application of "S.S." for a Permit to Carry a Pistol,* 130 *N.J.Super.* 21, 324 *A.*2d 611 (Essex County Ct.1974), the court determined that a presidential pardon of a federal conviction removed the *per se* statutory bar to obtaining a permit to carry a handgun applicable to convicted persons. Whether or not the applicant should be granted the permit depended upon application of a different part of the statute requiring that the applicant be of good character. Relying upon the Williston formulation quoted previously, the court concluded that the facts of the underlying offense could be taken into consideration to make that determination. *Id.* at 28–29, 324 *A.*2d at 615–16.

Given the absence of an express provision in the expungement statute as to whether the statutory bar for drug offenses is removed by an executive pardon, petitioner may be correct that the Legislature did not consider the question. *Cf. N.J.S.A.* 2A:168A–3 (quoted previously with respect to the effect of a pardon on professional and business licensing). At the same time, this court need not consider the suggestion in *Brezizecki v. Gregorio* that the constitutional authority of the Governor to grant pardons may supersede Legislative authority to limit the effect of a pardon on a statutory expungement remedy.

The discussion here of the effect of a Governor's pardon on other rights and disabilities, and the distinction between the fact

of conviction as opposed to the fact of committing the crime, lends support to petitioner's argument that the statutory bar as written is inapplicable to her case. It is not bad character evidenced by commission of the crime but the fact of *conviction* for possession with intent to sell that makes one ineligible for expungement under the statute. A person who does not dispute having committed the crime but who was not convicted of it (because of acquittal, pretrial intervention, lack of sufficient evidence to prosecute, or other similar reason) is nevertheless eligible to seek expungement of the criminal records of her arrest and prosecution. The legal disability provided in *N.J.S.A.* 2C:52–2(c) arises solely from the fact of conviction. The pardon, then, dissolves the attendant legal disability arising from the conviction. Consequently, L.B.'s petition can be heard on its merits.

■ On the merits of the application apart from the statutory bar, if anyone deserves the benefits of expungement, it is this petitioner. Without repeating the recitation of undisputed facts, she had an isolated criminal conviction at the age of nineteen and then changed her life by the age of thirty-five so that she can point with pride to an accomplished and blameless life. The State has not argued otherwise.

### III. Conclusion

Because petitioner's application meets all other statutory and procedural requirements, because the pardon removes the bar to expungement contained in N.J.S.A. 2C:52–2(c), and because petitioner is otherwise deserving of the remedy, this court concludes that her criminal record should be expunged. The petition is GRANTED.