SYLLABUS

This syllabus is not part of the Court’s opinion. It has been prepared by the Office of the
Clerk for the convenience of the reader. It has been neither reviewed nor approved by the
Court. In the interest of brevity, portions of an opinion may not have been summarized.

 In re Petition for Expungement of the Criminal Record Belonging to T.O.
 (A-55-19) (084009)

Argued October 26, 2020 -- Decided January 11, 2021

RABNER, C.J., writing for the Court.

 In this case, the Court considers the effect of a gubernatorial pardon on a request
to expunge a criminal record.

 T.O. has two prior convictions: aggravated assault, from May 1994, and
possession of a controlled dangerous substance within 1,000 feet of school property, from
May 1996. Since his release from prison more than two decades ago, T.O. has not been
arrested and has led a productive life. From 2001 to 2016, he worked for a private
corrections company, where he rose from an entry-level employee to supervisor of
operations. T.O. also volunteered at a homeless shelter and started a nonprofit group that
feeds the homeless.

 In October 2017, T.O. filed a petition for executive clemency. In January 2018,
then-Governor Christopher J. Christie granted T.O. “a full and free Pardon for all
criminal charges and convictions arising” out of his two prior arrests and convictions. In
June 2018, T.O. filed a petition to expunge all records related to the convictions.

 The State opposed T.O.’s petition and argued that N.J.S.A. 2C:52-2(a) barred
expungement for individuals with multiple convictions. Aside from the State’s reading
of the expungement statute, the prosecutor conceded that “[i]f there is a person deserving
of an expungement . . . , it is [T.O.]” The trial court agreed on both points: the court
concluded that T.O.’s petition was subject to the statutory bar, which the pardon did not
wipe out. Had the statute read otherwise, the court observed, T.O. “would have
qualified” for expungement. The Appellate Division affirmed, and the Court granted
T.O.’s petition for certification. 241 N.J. 199 (2020).

HELD: Pardons remove legal disabilities linked to the conviction itself but do not erase
the underlying facts of an offense. Here, T.O. faced a statutory bar that prevented him
from being eligible for expungement. That legal disability came into play solely because
of his prior convictions. The pardon -- which removed the legal disabilities that arose
from those convictions -- therefore dissolved the statutory bar. With the bar removed,
 1
T.O. is eligible to be considered for expungement on the merits. In light of the State’s
concession and the trial court’s agreement that T.O. would qualify for expungement in
the absence of a statutory bar, the Court grants T.O.’s petition for expungement.

1. In New Jersey, expungement is provided for by a statutory scheme “with the primary
objective of providing relief to the reformed offender who has led a life of rectitude and
disassociated himself with unlawful activity.” N.J.S.A. 2C:52-32. Not all convicted
individuals, however, are eligible for expungement. Among other restrictions at the time
T.O. filed his petition, the expungement statute provided, in part, that “a person may
present an expungement application . . . if: the person has been convicted of one crime
under the laws of this State, and does not otherwise have any prior or subsequent
conviction for another crime.” N.J.S.A. 2C:52-2(a) (2018) (emphasis added). The
parties do not rely on later amendments to the statute that enable a person with multiple
convictions to seek expungement of the latest conviction. (pp. 9-11)

2. Individuals who apply for expungement have an initial burden to satisfy the
requirements of the expungement statute by a preponderance of the evidence. Once
petitioners satisfy their burden, the burden shifts to the State to demonstrate by a
preponderance of the evidence that there is a statutory bar or that the petition should not
be granted. N.J.S.A. 2C:52-14 outlines grounds for the denial of an expungement
petition. If the State does not meet its burden, the petitioner is presumptively entitled to
expungement. The expungement statute has been amended over time to expand
opportunities for expungement. Despite multiple amendments to the statutory scheme,
the expungement law is silent about the effect of a pardon. (pp. 11-14)

3. The Court reviews cases dating back to the 1800s in which the United States Supreme
Court interpreted the presidential pardon power granted by the Federal Constitution, as
well as an influential article by Professor Williston. The New Jersey Constitution also
empowers the Executive to grant pardons. The Court reviews key cases exploring the
nature of the gubernatorial pardon power under the State Constitution and notes that
those decisions have held -- in accordance with the predominant reasoning set forth in
Supreme Court case law and Williston’s formulation -- that a pardon (1) forgives the
crime and removes the legal disabilities linked to the fact of the conviction itself, but (2)
does not erase the underlying facts of the offense or restore an individual’s good moral
character. (pp. 14-22)

4. One published Law Division ruling addressed the effect of a pardon on an application
for expungement. See In re L.B., 369 N.J. Super. 354, 367 (Law Div. 2004). After
reviewing case law and citing Professor Williston’s formulation, id. at 361-66, the court
observed that “[i]t is not bad character evidenced by commission of the crime but the fact
of conviction for possession with intent to sell that makes one ineligible for expungement
under the statute,” id. at 367. In other words, “[t]he legal disability provided in [the
statute] arises solely from the fact of conviction.” Ibid. Judge Ashrafi concluded that
 2
“[t]he pardon, then, dissolves the attendant legal disability arising from the conviction” --
and thus extinguishes the statutory bar. Ibid. (pp. 22-23)

5. The Court reviews case law from other jurisdictions and notes that they have reached
varying conclusions about the effect of a pardon on a petition for expungement. The
Court also notes that statutes in more than a dozen states explicitly provide, in different
ways, that receipt of a pardon makes a conviction eligible for expungement or some other
method to restrict public access to the records. (pp. 24-25)

6. Under the version of N.J.S.A. 2C:52-2(a) in effect when the trial court denied T.O.’s
petition, someone who had multiple criminal convictions -- not listed in a single
judgment of conviction or committed as part of a series of events in a short period of time
-- was ineligible for expungement. Although T.O.’s pardon did not erase the facts
underlying the commission of the offenses, it eliminated disabilities triggered by the
convictions themselves. Here, the statutory bar to expungement under section 2(a) arose
solely from T.O.’s two convictions. In light of the pardon, that disqualification -- or
disability -- no longer exists. T.O. is therefore eligible for expungement of both of his
convictions. (pp. 26-27)

7. That does not mean expungement is automatic, however. Under the statutory scheme,
once T.O. has satisfied the law’s initial requirements, the burden shifts to the State to
demonstrate by a preponderance of the evidence why his petition should not be granted.
For example, the State may attempt to show that “[t]he need for the availability of the
records outweighs the desirability of having a person freed from” limitations the
expungement statute provides. See N.J.S.A. 2C:52-14(b); see also N.J.S.A. 2C:52-14
(listing other grounds for denial of relief). Section 14(b) calls for a qualitative
assessment of the public and private interests at stake, which does not turn on the fact of a
conviction. Relevant grounds could include, among other things, the circumstances of a
particular offense, details about what the applicant did, and the harm the person caused.
Such case-specific facts are not wiped clean by a pardon. (pp. 27-28)

8. In this case, nothing in the record demonstrates the need for the continued availability
of T.O.’s records. See N.J.S.A. 2C:52-14(b). The State presented no argument against
expungement other than the statutory bar for multiple convictions. In fact, at the hearing
in the trial court, the State conceded that T.O. was deserving of expungement, an
assessment shared by the trial court. Accordingly, T.O. is entitled to expungement of
criminal records related to his 1994 and 1996 convictions. (p. 29)

 The judgment of the Appellate Division is REVERSED, T.O.’s petition is
GRANTED, and the matter is REMANDED to the trial court.

JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA,
SOLOMON, and PIERRE-LOUIS join in CHIEF JUSTICE RABNER’s opinion.
 3
 SUPREME COURT OF NEW JERSEY
 A-55 September Term 2019
 084009

 In re Petition for Expungement of the
 Criminal Record Belonging to T.O.

 On certification to the Superior Court,
 Appellate Division.

 Argued Decided
 October 26, 2020 January 11, 2021

Jennifer A. Hradil argued the cause for appellant T.O.
(Gibbons, attorneys; Jennifer A. Hradil and William J.
Palatucci, of counsel and on the briefs, and Brendan J.
Kelly, on the briefs).

Erin M. Campbell, Assistant Prosecutor, argued the
cause for respondent State of New Jersey (Esther
Suarez, Hudson County Prosecutor, attorney; Erin M.
Campbell, on the briefs).

Guillermo C. Artiles argued the cause for amici curiae
the Honorable Christopher J. Christie, Honorable Jon
S. Corzine, Honorable Richard J. Codey, Honorable
James E. McGreevey, Honorable John O. Bennett,
Honorable Donald T. DiFrancesco, Honorable
Christine Todd Whitman, Honorable James J. Florio,
and Honorable Thomas H. Kean, Sr. (McCarter &
English, attorneys; Guillermo C. Artiles and Geoffrey
Rosamond, of counsel and on the brief, and Omar A.
Bareentto and Newton Portorreal, Jr., on the brief).

Tess Borden argued the cause for amici curiae
American Civil Liberties Union of New Jersey, New
Jersey Institute for Social Justice, and Volunteer

 1
 Lawyers for Justice (American Civil Liberties Union
 of New Jersey Foundation, attorneys; Tess Borden,
 Alexander Shalom, and Jeanne LoCicero, on the
 brief).

 CHIEF JUSTICE RABNER delivered the opinion of the Court.

 In this case, we consider the effect of a gubernatorial pardon on a

request to expunge a criminal record.

 T.O. was convicted of separate crimes in 1994 and 1996. In the decades

since, he has been gainfully employed, has made contributions to the

community, and has successfully rehabilitated himself. In 2018, the Governor

granted T.O. a full and complete pardon for his two convictions.

 T.O. then sought to expunge the records of those convictions. Both the

trial court and the Appellate Division concluded that he was ineligible for

relief because the language of the relevant statutory section at the time,

N.J.S.A. 2C:52-2(a), did not allow individuals with multiple, separate

convictions like T.O.’s to apply for expungement.

 Pardons have consequences under the law. They remove legal

disabilities linked to the conviction itself but do not erase the underlying facts

of an offense. Storcella v. Dep’t of Treasury, 296 N.J. Super. 238, 243-44

(App. Div. 1997); Hozer v. Dep’t of Treasury, 95 N.J. Super. 196, 202 (App.

Div. 1967). A pardon, therefore, forgives punishment for an offense and

 2
removes other disabilities but does not change history or restore a person’s

good moral character. Ibid.

 Here, T.O. faced a statutory bar that prevented him from being eligible

for expungement. That legal disability came into play solely because of his

prior convictions. The pardon -- which removed the legal disabilities that

arose from those convictions -- therefore dissolved the statutory bar. With the

bar removed, T.O. is eligible to be considered for expungement on the merits.

 The State concedes that T.O. otherwise deserves to have his record

expunged. We therefore reverse the judgment of the Appellate Division and

grant T.O.’s petition for expungement.

 I.

 A.

 T.O. has two prior convictions. In May 1994, he pleaded guilty to

aggravated assault, in violation of N.J.S.A. 2C:12-1(b)(1). Two years later, in

May 1996, he pleaded guilty to possession of a controlled dangerous substance

within 1,000 feet of school property, in violation of N.J.S.A. 2C:35-7.

 Since his release from prison more than two decades ago, T.O. has not

been arrested and has led a productive life. From 2001 to 2016, he worked for

a private corrections company that operated residential reentry facilities, jails,

and drug treatment programs. He rose from an entry-level employee to

 3
supervisor of operations. T.O. also volunteered at a homeless shelter and

started a nonprofit group that partners with homeless shelters and other

community organizations to feed the homeless.

 On October 6, 2017, T.O. filed a petition for executive clemency and

sought a pardon. More than twenty co-workers, family members, friends, and

fellow volunteers at nonprofit groups wrote letters of recommendation in

support of T.O.

 On January 12, 2018, then-Governor Christopher J. Christie granted T.O.

“a full and free Pardon for all criminal charges and convictions arising” out of

his two prior arrests and convictions. Months later, in June 2018, T.O. filed a

petition in Superior Court to expunge all records related to the convictions.

 B.

 The State opposed T.O.’s petition and argued that the expungement

statute, specifically N.J.S.A. 2C:52-2(a), barred expungement for individuals

with multiple convictions. According to the State, a gubernatorial pardon did

not nullify the statutory bar. At the same time, the State acknowledged “the

total change in [T.O.’s] life and that he’s been living a productive, law -abiding

life since the 90s.” Aside from the State’s reading of the expungement statute,

the prosecutor conceded that “[i]f there is a person deserving of an

expungement . . . , it is [T.O.]”

 4
 The trial court agreed with the State on both points. In an oral ruling o n

February 15, 2019, the court concluded that T.O.’s petition was subject to the

statutory bar, which the pardon did not wipe out. Had the statute read

otherwise, the court observed, T.O. “would have qualified” for expungement.

The judge acknowledged T.O.’s “sober, offense-free life for 23 years,” stated

“I wish I could grant him his application,” and encouraged T.O. to file an

appeal.

 C.

 T.O. did appeal, and on December 30, 2019, the Appellate Division

affirmed the denial of his petition for expungement. Like the trial court, the

Appellate Division concluded that, despite T.O.’s pardon, the plain language

of the expungement statute barred his petition because he had more than one

conviction.

 The appellate court observed that “expungement is not a right

guaranteed by constitutional or common law; it is purely the product of

legislation,” which limits courts “to the terms of the statute.” By comparison,

the court explained, “a pardon is a matter of executive grace” that does not

erase the conduct that led to a conviction or all of the consequences of a

conviction. The Appellate Division noted that, despite various amendments to

the expungement statute, the Legislature had not altered the language that

 5
barred expungements for multiple offenses, aside from certain situations that

did not apply. See N.J.S.A. 2C:52-2(a).

 D.

 We granted T.O.’s petition for certification. 241 N.J. 199 (2020). We

also granted two requests for leave to appear as amici curiae: the first, to

former Governors Christopher J. Christie, Jon S. Corzine, Richard J. Codey,

James E. McGreevey, John O. Bennett, Donald T. DiFrancesco, Christine

Todd Whitman, James J. Florio, and Thomas H. Kean, Sr. (the Former

Governors); and the second, to the American Civil Liberties Union of New

Jersey (ACLU), New Jersey Institute for Social Justice (NJISJ), and Volunteer

Lawyers for Justice (VLJ).

 II.

 T.O. argues that the State Constitution grants the Executive the exclusive

authority to issue a pardon, citing N.J. Const. art. V, § 2, ¶ 1, and that the

reach of a pardon may not be diminished or frustrated by an act of the

Legislature. As a result, T.O. contends, the Appellate Division’s interpretation

of the expungement law unconstitutionally interferes with the Executive’s

pardon power and violates the doctrine of separation of powers.

 T.O. submits that a pardon eliminates any disqualification triggered by

the fact of a conviction. Because the legal disability in this case arises solely

 6
from the fact that he was convicted multiple times, T.O. maintains he is

eligible to be considered for expungement.

 T.O. also argues that interpreting the expungement statute to afford a

pardon its full effect is consistent with the Legislature’s intent to provide relief

to reformed offenders, citing N.J.S.A. 2C:52-32.

 The ACLU, NJISJ, and VLJ advance similar arguments in support of

T.O.’s petition. They likewise argue that N.J.S.A. 2C:52-2(a) does not bar an

application for expungement of multiple pardoned convictions and that the

constitutional pardon power should not be interpreted restrictively.

 The organizations emphasize that amendments to the expungement law

have steadily expanded the statute’s reach, including amendments in 2019 that

allow individuals with multiple convictions to seek to expunge their latest

conviction. Amici argue that any ambiguity or silence in the law about the

effect of a pardon on expungement should therefore be read in favor of

expungement.

 Amici also highlight benefits of expungement like greater access to

employment and housing, and lower recidivism rates. Finally, they note that

more than twenty states provide that a pardon makes the recipient eligible for

expungement by statute or case law.

 7
 The Former Governors raise similar concerns. They assert that the

power to pardon belongs exclusively to the Governor, that it is not subject to

limitation by the Legislature or judicial review, and that it dissolves all legal

disabilities arising from a pardoned conviction. The Former Governors submit

the pardon power must be given full effect to avoid separation of powers

concerns. They also argue that the analysis set forth in In re L.B., 369 N.J.

Super. 354 (Law Div. 2004), should be adopted.

 In short, the Former Governors claim that full vindication of the

Executive’s powers requires that T.O. not be precluded from seeking

expungement. At oral argument, counsel for the Former Governors argued

more broadly that a pardon should automatically result in expungement of a

criminal conviction.

 The State contends that T.O.’s pardon does not make him eligible for

expungement. The State also asserts that a gubernatorial pardon may not

interfere with the Legislature’s statutory scheme for expungement.

 More specifically, the State argues that a pardon has no effect on T.O.’s

eligibility for expungement because he remains convicted of two crimes. The

State adds that no legislative intent exists to expunge multiple indictable

convictions. Despite periodic amendments to the expungement statute, the

 8
State notes, “the Legislature has not seen fit to include pardons in the statute”

or allow for expungement of multiple indictable convictions.

 The State also contends that the majority of jurisdictions have held “that

a pardon . . . does not remove the adjudication of guilt.”

 III.

 To assess the effect of a gubernatorial pardon on a petition for

expungement, we begin with an overview of the expungement statute and then

outline certain principles relating to pardons.

 A.

 Expungement of a criminal conviction “offers a second chance to

rehabilitated offenders who have made a commitment to lead law-abiding

lives.” In re T.B., 236 N.J. 262, 267 (2019). In New Jersey, expungement is

provided for by statute, N.J.S.A. 2C:52-1 to -32.1. As the Legislature

explained, the statutory scheme

 shall be construed with the primary objective of
 providing relief to the reformed offender who has led a
 life of rectitude and disassociated himself with
 unlawful activity, but not to create a system whereby
 persistent violators of the law or those who associate
 themselves with continuing criminal activity have a
 regular means of expunging their police and criminal
 records.

 [N.J.S.A. 2C:52-32.]

 9
 Not all convicted individuals, however, are eligible for expungement.

The statute sets forth various restrictions. See, e.g., N.J.S.A. 2C:52-2(a) to (c).

Among other restrictions at the time T.O. filed his petition in 2018, the

expungement statute provided, in part, that “a person may present an

expungement application to the Superior Court pursuant to this section if: the

person has been convicted of one crime under the laws of this State, and does

not otherwise have any prior or subsequent conviction for another crime.”

N.J.S.A. 2C:52-2(a) (2018) (emphasis added).

 In December 2019, the Legislature amended the highlighted language.

L. 2019, c. 269, § 2. In addition to other changes, the statute will no longer

include a bar on expungement for individuals with multiple convictions. The

amended text of N.J.S.A. 2C:52-2(a) will instead allow people with multiple

convictions to apply for expungement of their latest conviction.

 The amended language in section 2(a) reads, in part, that “a person may

present an expungement application to the Superior Court pursuant to this

section if: the person has been convicted of one crime under the laws of this

State, and does not otherwise have any subsequent conviction for another

crime.” L. 2019, c. 269, § 2 (emphasis added). By removing the words “any

prior,” the Legislature opened the door to applicants who had previously been

ineligible for expungement because of an earlier conviction.

 10
 The parties largely do not address the effect of the recent changes to

section 2(a) and do not rely on them. Nor do the parties address the operative

date of the amended language. Compare L. 2019, c. 269, § 2 (eff. June 15,

2020), with Exec. Order No. 178, 52 N.J.R. 1704(a) (Aug. 14, 2020) (delaying

the effective date of certain amendments to the expungement statute, including

changes to N.J.S.A. 2C:52-2(a), from June 15, 2020 to February 15, 2021,

because of the COVID-19 pandemic).

 Individuals who apply for expungement have an initial burden to satisfy

the requirements of the expungement statute by a preponderance of the

evidence. In re D.H., 204 N.J. 7, 18 (2010). Petitioners must present a

verified petition and certain accompanying statements. See generally N.J.S.A.

2C:52-7 to -8.

 Once petitioners satisfy their burden, the burden “shifts to the State to

‘demonstrat[e] by a preponderance of the evidence that there is a statutory bar

or that the petition should not be granted.’” D.H., 204 N.J. at 18 (quoting In re

G.R., 395 N.J. Super. 428, 431 (App. Div. 2007)). The State, for example, is

obligated to present any facts that may bar relief or demonstrate why relief

would be inappropriate. N.J.S.A. 2C:52-24.

 Section 14 of the statute outlines grounds for the denial of an

expungement petition. N.J.S.A. 2C:52-14. Those grounds include the

 11
following: if “[a]ny statutory prerequisite . . . is not fulfilled or there is any

other statutory basis for denying relief,” id. at (a); and if “[t]he need for the

availability of the records outweighs the desirability of having a person freed

from any disabilities as otherwise provided in” the statute, id. at (b).1 If the

State does not meet its burden, the petitioner is presumptively entitled to

expungement. D.H., 204 N.J. at 18.

 If a court grants expungement, “the arrest, conviction and any other

proceedings related thereto shall be deemed not to have occurred, and the

petitioner may answer any questions relating to their occurrence accordingly.”

N.J.S.A. 2C:52-27. Nonetheless, a person whose record has been expunged

must still reveal information in expunged records if he or she seeks

employment with the Judiciary, law enforcement, or a corrections agency.

N.J.S.A. 2C:52-27(c); see also Cicchetti v. Morris Cnty. Sheriff’s Off., 194

N.J. 563, 584-85 (2008) (noting that although section 27(c) requires

disclosure, it does not impose an absolute bar to employment).

 Expunged records -- including complaints, warrants, arrests, judicial

docket records, and related items -- are extracted and isolated but not

1
 Other grounds for denial include (1) pending civil litigation related to the
arrest or conviction sought to be expunged, N.J.S.A. 2C:52-14(d); and (2)
certain situations in which the person had a prior conviction expunged, id. at
(e).
 12
destroyed. N.J.S.A. 2C:52-1, -15; In re Kollman, 210 N.J. 557, 568-69 (2012).

The records remain available to courts, county prosecutors, probation and

pretrial services, and the Attorney General for use in connection with bail

hearings, decisions on pretrial release, presentence reports, and sentencing.

N.J.S.A. 2C:52-21. They also remain available to the Parole Board to assess

parole requests, N.J.S.A. 2C:52-22, and to the Department of Corrections to

classify and assign inmates, N.J.S.A. 2C:52-23.

 The expungement statute has been amended over time to expand

opportunities for expungement. See, e.g., In re J.S., 223 N.J. 54, 66-71 (2015)

(recounting amendments from the statute’s enactment in 1931 through 2010).

In 2010, the Legislature expanded the types of crimes that can be expunged

and reduced the wait time to apply if expungement is in the public interest.

Kollman, 210 N.J. at 570-72. In 2017, the Legislature relaxed the requirement

that an applicant have only one conviction and allowed expungement for

multiple convictions that were listed in a single judgment or were otherwise

“interdependent or closely related . . . and were committed as part of a

sequence of events within a comparatively short period of time.” N.J.S.A.

2C:52-2(a) (as amended by L. 2017, c. 244, § 1 (eff. Oct. 1, 2018)).

 The Legislature amended the statute once again in December 2019. L.

2019, c. 269. In addition to the removal of the words “any prior” from section

 13
2(a), discussed above, the amendment will allow people to apply for a “clean

slate” expungement. Id. § 7 (codified at N.J.S.A. 2C:52-5.3). Under that new

provision, individuals can seek to expunge multiple convictions after a period

of ten years from their most recent conviction. Ibid.2 Among other changes,

the recent amendment also requires the State to establish an automated process

for “clean slate” expungements. Id. § 8 (to be codified at N.J.S.A. 2C:52-5.4).

 Despite multiple amendments to the statutory scheme, the expungement

law is silent about the effect of a pardon.

 B.

 Although the outcome of this appeal turns on state law, federal law

dating back to the 1800s informs the modern understanding of the meaning and

effect of a pardon. For that reason, we briefly review certain federal cases and

relevant commentary before turning to state law.

 1.

 The Federal Constitution provides the President the “Power to grant

Reprieves and Pardons for Offences against the United States, except in Cases

of Impeachment.” U.S. Const. art. II, § 2, cl. 1.

2
 The parties do not rely on this amendment, whose operative date also
appears to be affected by Executive Order No. 178. See 52 N.J.R. 1704(a)
(delaying the amendment’s effective date until February 15, 2021).
 14
 The Supreme Court first addressed the pardon power in United States v.

Wilson, 32 U.S. 150 (1833). In an opinion by Chief Justice John Marshall, the

Court stated that “[a] pardon is an act of grace . . . which exempts the

individual, on whom it is bestowed, from the punishment the law inflicts for a

crime he has committed.” Id. at 160. Two decades later, in Ex parte Wells,

the Court noted that the President’s power to pardon was based on, and should

be given the same meaning as, the King of England’s power at the time the

Constitution was drafted. 59 U.S. 307, 311 (1856). The Court therefore

recounted that “[a] pardon is said by Lord Coke to be a work of mercy,

whereby the king . . . forgiveth any crime, offence, punishment, execution,

right, title, debt, or duty, temporal or ecclesiastical.” Ibid.

 The Court used more expansive language in Ex parte Garland to describe

the effect of a pardon. 71 U.S. 333 (1867). The Court stated that

 [a] pardon reaches both the punishment prescribed for
 the offence and the guilt of the offender; and when the
 pardon is full, it releases the punishment and blots out
 of existence the guilt, so that in the eye of the law the
 offender is as innocent as if he had never committed the
 offence. If granted before conviction, it prevents any
 of the penalties and disabilities consequent upon
 conviction from attaching; if granted after conviction,
 it removes the penalties and disabilities, and restores
 him to all his civil rights; it makes him, as it were, a
 new man, and gives him a new credit and capacity.

 [Id. at 380-81.]
 15
But after explaining the concept of a pardon in broad, general terms, the Court

focused on Garland’s pardon in particular and granted him relief: “The effect

of this pardon is to relieve the petitioner from all penalties and disabilities

attached to [his] offence . . . . So far as that offence is concerned, he is thus

placed beyond the reach of punishment of any kind.” Id. at 381. The Court’s

focus on the infliction of punishment for conduct that had been pardoned was

consistent with its earlier approach in Wilson. See ibid.

 Cases after Garland limited the notion that a pardon blots out an earlier

offense. In Knote v. United States, for example, the Court reiterated that “[a]

pardon is an act of grace” that releases an offender “from the consequences of

his offence, so far as . . . practicable,” and “from all disabilities emposed by

the offence.” 95 U.S. 149, 153 (1877). Using less expansive language than it

did in Garland, the Court added that a pardon “so far blots out the offence, that

afterwards it cannot be imputed to him to prevent the assertion of his legal

rights.” Ibid. A pardon, however, “does not make amends for the past,”

“affords no relief for” past imprisonment or punishment, and “does not give

compensation for what has been done or suffered.” Id. at 153-54. As a result,

the Court concluded that a pardoned landowner could not recover the proceeds

of the sale of seized property. Id. at 152, 154.

 16
 In Burdick v. United States, the Court again moved away from the broad

conception of a pardon announced in Garland. 236 U.S. 79 (1915). The Court

reaffirmed the principles in Wilson and noted that a pardon “remits

punishment.” Id. at 91, 95. More pointedly, the Court explained that a pardon

“carries an imputation of guilt; acceptance a confession of it.” Id. at 94; see In

re North, 62 F.3d 1434, 1437 (D.C. Cir. 1994) (“Garland’s dictum was

implicitly rejected in Burdick . . . .”); United States v. Noonan, 906 F.2d 952,

958 (3d Cir. 1990) (“By 1915 . . . the Court made clear that it was not

accepting the Garland dictum that a pardon ‘blots out of existence the guilt.’”).

 Decades later, the Court observed in Nixon v. United States that “the

granting of a pardon is in no sense an overturning of a judgment of conviction

by some other tribunal; it is ‘an executive action that mitigates or sets aside

punishment for a crime.’” 506 U.S. 224, 232 (1993) (quoting Black’s Law

Dictionary 1113 (6th ed. 1990)).

 An influential article by Professor Samuel Williston in 1915 distilled the

following principles about the effect of a pardon:

 The true line of distinction seems to be this: The pardon
 removes all legal punishment for the offence.
 Therefore if the mere conviction involves certain
 disqualifications which would not follow from the
 commission of the crime without conviction, the pardon
 removes such disqualifications. On the other hand, if
 character is a necessary qualification and the

 17
 commission of a crime would disqualify even though
 there had been no criminal prosecution for the crime,
 the fact that the criminal has been convicted and
 pardoned does not make him any more eligible.

 [Samuel Williston, Does A Pardon Blot Out Guilt?, 28
 Harv. L. Rev. 647, 653 (1915).]

In other words, although a pardon eliminates the legal consequences that stem

from a conviction, the moral consequences of the offense live on.

 2.

 The New Jersey Constitution also empowers the Executive to grant

pardons. Our focus is on the 1947 Constitution and case law that interprets it.

 We note preliminarily that the Constitutions of 1776 and 1844 also

included the power to pardon. See N.J. Const. of 1776 art. IX (conferring the

power on the Governor and Legislative Council); N.J. Const. of 1844 art. V,

¶ 10 (conferring the power on the Governor, Chancellor, and a majority of the

Judges of the Court of Errors and Appeals).

 One decision from 1857 addressed the scope of the pardon power. In

Cook v. Board of Chosen Freeholders, the Supreme Court 3 determined that a

“pardon does not restore” what a convicted party “has already endured or

3
 The Supreme Court was an intermediate appellate court prior to the 1948
Constitution. Sun Life Assurance Co. of Can. v. Wells Fargo Bank, N.A., 238
N.J. 157, 166 n.2 (2019). “[I]ts rulings were subject to review by the Court of
Errors and Appeals, the State’s highest court at the time.” Ibid.
 18
paid,” “but it releases him from all further penalty.” 26 N.J.L. 326, 329 (Sup.

Ct. 1857). In terms reminiscent of Garland, the court explained that “[t]he

effect of a pardon subsequent to the conviction is to make the offender a new

man, and to acquit him of all penalties and forfeitures annexed to the offense

for which he obtains his pardon.” Ibid. But the court did not equate the

creation of “a new man” with innocence, or an obliteration of guilt. Instead,

the court stated that innocence

 is not, in practice, the ground upon which pardons are
 or ought to be based, nor is it the ground upon which
 the pardoning power in a government is created and
 sustained. Pardon implies guilt. If there be no guilt
 there is no ground for forgiveness. It is an appeal to
 executive clemency. It is asked as a matter of favor to
 the guilty. It is granted not of right but of grace. A
 party is acquitted on the ground of innocence, he is
 pardoned through favor.

 [Id. at 331.]

A pardon, the court therefore concluded, “operates prospectively only” and

does not entitle one to restitution of a fine that has already been paid. Id. at

334.

 It appears, then, that Cook treated the pardon power conferred by the

1844 Constitution not as a retroactive “blotting out” of past guilt, but as a

forward-looking determination that no further legal consequences should flow

from a conviction that has been pardoned.
 19
 Article V, Section 2, Paragraph 1 of New Jersey’s modern Constitution

provides that “[t]he Governor may grant pardons and reprieves in all cases

other than impeachment and treason, and may suspend and remit fines and

forfeitures.” This power to pardon lies exclusively with the Executive, and the

decision to pardon is not subject to judicial review. See State v. Mangino, 17

N.J. Super. 587, 591 (App. Div. 1952) (declining to review an act of

“executive clemency” -- which includes the power to pardon and to commute a

sentence, see Black’s Law Dictionary, 318 (11th ed. 2019)); Brezizecki v.

Gregorio, 246 N.J. Super. 634, 644 (Law Div. 1990).

 “A pardon relieves the guilty person from the burden of the crimes

forgiven so that the legal disabilities attendant upon the convictions are

removed.” Storcella, 296 N.J. Super. at 243 (emphasis added). “[B]ut not all

consequences of the conviction are erased by the pardon.” Id. at 244. As the

Appellate Division explained in Hozer,

 [w]hile a pardon may restore to a convicted felon his
 rights of citizenship and remove all penalties and legal
 disabilities, it cannot and does not substitute a good
 reputation for one that is bad; it does not obliterate the
 fact of the commission of the crime; it does not wash
 out the moral stain; it involves forgiveness and not
 forgetfulness and it does not wipe the slate clean.

 [95 N.J. Super. at 202 (quotation omitted).]

 20
 Despite a pardon, then, the Appellate Division has held that a person can

be denied a license as a lottery agent because of past criminal activity -- like

conducting a bookmaking operation -- which reflects on the applicant’s moral

character and the integrity of the State Lottery. Storcella, 296 N.J. Super. at

243-44 (citing N.J.A.C. 17:20-5.1). Likewise, the Appellate Division has held

that a police officer who unlawfully protects a bookmaking operation and

receives a pardon can be denied a pension because he did not serve honorably,

as the applicable statute requires. Hozer, 95 N.J. Super. at 204 (citing N.J.S.A.

43:16-1).

 Consistent with those rulings, a county court held that a pardoned

conviction could be considered to determine whether a person had the requisite

“good character” to receive a gun permit. In re Application of S.S., 130 N.J.

Super. 21, 27-29 (Cnty. Ct. 1974) (citing N.J.S.A. 2A:151-33 (repealed 1979)

(current version at N.J.S.A. 2C:58-4)). The court held that although the

pardon removed a statutory bar based on the existence of a prior conviction,

the commission of the crime offered “rebuttable evidence of lack of good and

moral character.” Id. at 27, 29.

 On the other hand, the Law Division has held that a former public

official convicted of a crime can seek public office after a pardon. Brezizecki,

246 N.J. Super. at 643-44. Under the relevant statute, a person is disqualified

 21
forever from holding office if convicted of an offense that involves or touches

on the individual’s public office; a person’s bad character, though, is not a

basis for disqualification under the law. See N.J.S.A. 2C:51-2(d); Brezizecki,

246 N.J. Super. at 643 (discussing N.J.S.A. 2C:51-2(c) (1990)). Because a

pardon removes the legal disabilities attendant to a conviction, the court

concluded that the basis for the disqualification no longer existed. Brezizecki,

246 N.J. Super. at 643-44.

 In the above situations, courts held that a pardon (1) forgives the crime

and removes the legal disabilities linked to the fact of the conviction itself, but

(2) does not erase the underlying facts of the offense or restore an individual’s

good moral character. In other words, as Professor Williston explained a

century ago, if a disqualification is triggered by the fact of a conviction, a

pardon eliminates the disability; if a person’s character is the key question, a

pardon does not prevent courts from considering the commission of the

offense. Williston, 28 Harv. L. Rev. at 653.

 IV.

 One published Law Division ruling addressed the effect of a pardon on

an application for expungement. See L.B., 369 N.J. Super. 354. In a

thoughtful opinion, Judge Ashrafi concluded that a pardon removed a statutory

 22
bar based on the fact of the conviction and therefore allowed the petitioner to

seek expungement. Id. at 367.

 L.B., the petitioner, had a 1988 conviction for possession of cocaine

with intent to distribute. Id. at 356. After the Governor granted L.B. a pardon

in 2001, she applied to expunge the records of her arrest and conviction. Id. at

357. At that time, her offense was specifically barred from expungement

under the statute. Id. at 358 (citing N.J.S.A. 2C:52-2(c) (2004)).

 The trial court first reviewed the above case law and cited Professor

Williston’s formulation. Id. at 361-66. The court then observed that “[i]t is

not bad character evidenced by commission of the crime but the fact of

conviction for possession with intent to sell that makes one ineligible for

expungement under the statute.” Id. at 367. In other words, “[t]he legal

disability provided in [the statute] arises solely from the fact of conviction.”

Ibid. Judge Ashrafi concluded that “[t]he pardon, then, dissolves the attendant

legal disability arising from the conviction” -- and thus extinguishes the

statutory bar. Ibid.

 The trial court went on to consider the merits of L.B.’s petition under the

expungement statute. After finding that she met all of the law’s other

requirements and was “a deserving applicant,” the court granted her petition.

Id. at 363, 367.

 23
 The Third Circuit considered the effect of a presidential pardon on a

request for expungement in Noonan. The appeal involved a 1977 pardon for

individuals who did not appear for induction and thus violated the Military

Selective Service Act. 906 F.2d at 953-54. The Circuit concluded that under

federal law, the executive branch does not have the power on its own to

expunge records of the judicial branch. Id. at 955-96. “The power to pardon,”

the court explained, “is an executive prerogative of mercy, not of judicial

record-keeping.” Id. at 955. Beyond the question of the President’s authority,

the court observed that “the grant of a pardon does not wipe out the record of a

conviction.” Id. at 956.

 The Third Circuit relied on federal common law, which differs from

New Jersey’s expungement statute in important ways: expungement (or

“expunction”) in the federal system is “an extraordinary remedy,” id. at 956,

that “is confined to extreme circumstances,” id. at 957. Under New Jersey

law, by contrast, expungement is granted more liberally when the statutory

requirements are met. See, e.g., D.H., 204 N.J. at 18 (noting petitioners are

“presumptively entitled to expungement” when they meet their initial statutory

burden and the State does not satisfy its burden in opposition).

 In the end, the Circuit concluded that the petitioner’s pardon did not

justify expungement of his criminal record. Noonan, 906 F.2d at 960.

 24
 State law from other jurisdictions varies. In states where there is no

statutory provision that expressly provides for expungement of a pardoned

offense, several courts have held that a pardon does not entitle the recipient to

expungement. See Polk v. State, 150 So. 3d 967, 970 (Miss. 2014); R.J.L. v.

State, 887 So. 2d 1268, 1281 (Fla. 2004); State v. Skinner, 632 A.2d 82, 87

(Del. 1993) (superseded by a statute that allows for discretionary

expungement, Del. Code Ann. tit. 11, § 4375). One state high court, hearkening

back to language in Garland, observed that a pardon blots out guilt and thus

automatically entitles one to expungement. Commonwealth v. C.S., 534 A.2d

1053, 1054 (Pa. 1987) (“A pardon without expungement is not a pardon.”); see

also State v. Bergman, 558 N.E.2d 1111, 1114 (Ind. Ct. App. 1990). 4

4
 Unlike the law in New Jersey, statutes in more than a dozen other states
explicitly provide, in different ways, that receipt of a pardon makes a
conviction eligible for expungement or some other method to restrict public
access to the records. See Ark. Code Ann. § 16-90-1411; Conn. Gen. Stat.
§ 54-142a(d); Del. Code Ann. tit. 11, § 4375; Ga. Code Ann. § 35-3-37(j)(7);
20 Ill. Comp. Stat. Ann. 2630/5.2(e); Ky. Rev. Stat. Ann. § 431.073(1)(c); Md.
Code Ann., Crim. Proc. § 10-105(a)(8); Md. Code Ann., Pub. Safety
§ 2-511(a); Mass. Gen. Laws ch. 127, § 152; Neb. Rev. Stat. § 29-3523(5);
N.C. Gen. Stat. § 15A-149; Okla. Stat. tit. 22, § 18(A)(4); Or. Rev. Stat.
§ 144.653(2); 18 Pa. Cons. Stat. § 9122.2(a)(4); S.D. Codified Laws § 24-14-
11; Tenn. Code Ann. § 40-32-101(h); Tex. Code Crim. Proc. Ann. art.
55.01(a)(1)(B); Utah Code Ann. § 77-27-5.1; Va. Code Ann. § 19.2-392.2(I);
Wash. Rev. Code § 9.94A.030(11)(b); W. Va. Code § 5-1-16a.

 25
 V.

 We turn next to T.O.’s petition and conclude that records of his charges

and convictions from around 1994 and 1996 may be considered for

expungement under state law. Under the version of N.J.S.A. 2C:52-2(a) in

effect when the trial court denied T.O.’s petition, someone who had multiple

criminal convictions -- not listed in a single judgment of conviction or

committed as part of a series of events in a short period of time -- was

ineligible for expungement. 5

 The Governor’s pardon, however, removed the legal disabilities linked

to T.O.’s convictions. See Storcella, 296 N.J. Super. at 243. More

specifically, although the pardon did not erase the facts underlying the

commission of the offenses, it eliminated disabilities triggered by the

convictions themselves. Here, the statutory bar to expungement under section

2(a) arose solely from T.O.’s two convictions. See L.B., 369 N.J. Super. at

5
 As noted earlier, amendments to N.J.S.A. 2C:52-2(a) in December 2019
enable a person with multiple convictions to seek expungement of the latest
conviction. L. 2019, c. 269, § 2 (amending N.J.S.A. 2C:52-2(a)); see also
Exec. Order No. 178, 52 N.J.R. 1704(a). The recent revisions also provide for
“clean slate” expungement of multiple convictions ten years after the person’s
latest conviction. L. 2019, c. 269, §§ 7 to 8 (codified at N.J.S.A. 2C:52-5.3 to
-5.4).

 26
367. In light of the pardon, that disqualification -- or disability -- no longer

exists. T.O. is therefore eligible for expungement of both of his convictions.6

 That does not mean expungement is automatic, however. Under the

statutory scheme, once T.O. has satisfied the law’s initial requirements, the

burden shifts to the State to demonstrate by a preponderance of the evidence

why his petition should not be granted. D.H., 204 N.J. at 18.

 To be clear, T.O. does not argue that expungement should automatically

follow the grant of a pardon. He contends that he is entitled to expungement

under the existing statutory framework. The Former Governors advance a

broader position and submit that a pardon should automatically result in

expungement. We respectfully do not agree.

 Courts and legal scholars recognize that a pardon removes the legal

disabilities that stem from the fact of a conviction but does not erase what

happened when an offense was committed or restore a person’s good character.

Storcella, 296 N.J. Super. at 243-44; Hozer, 95 N.J. Super. at 202; Williston, 28

Harv. L. Rev. at 653. Thus, although a pardon renders a person eligible for

expungement, it does not alter history. A pardoned individual may still fail to

6
 T.O. argued that a contrary interpretation of the expungement statute would
unconstitutionally interfere with the pardon power. We need not address that
claim in light of our ruling.
 27
qualify under the statute for reasons other than the fact of conviction -- reasons

that live on after a pardon has been granted.

 For example, the State may attempt to show that “[t]he need for the

availability of the records outweighs the desirability of having a person freed

from” limitations the expungement statute provides. See N.J.S.A. 2C:52-

14(b); see also N.J.S.A. 2C:52-14 (listing other grounds for denial of relief).

 Section 14(b) calls for a qualitative assessment of the public and private

interests at stake, which does not turn on the fact of a conviction. Otherwise,

because most petitioners have a prior conviction they are seeking to expunge,

section 14(b) could override much of the expungement scheme. Instead, the

section places the burden on the objector to assert grounds that might weigh

against expungement. Those grounds could include, among other things, the

circumstances of a particular offense, details about what the applicant did, and

the harm the person caused. See Kollman, 210 N.J. at 574-75 (considering the

nature of an offense in the context of N.J.S.A. 2C:52-2(a)(2) and (c)(3)

(2012)).7 Such case-specific facts are not wiped clean by a pardon.

7
 We do not suggest that simply invoking the serious nature of an off ense in a
generic manner could satisfy the State’s burden under section 14(b). See
Kollman, 210 N.J. at 575, 578-80 (identifying public-interest considerations);
In re J.N.G., 244 N.J. Super. 605, 610 (App. Div. 1990) (“The State cannot . . .
sustain[] its burden . . . simply by asserting that bad crimes establish a ‘need
for the availability of the records.’”).

 28
 In this case, nothing in the record demonstrates the need for the

continued availability of T.O.’s records. See N.J.S.A. 2C:52-14(b). The State

presented no argument against expungement other than the statutory bar for

multiple convictions. In fact, at the hearing in the trial court, the State

conceded that T.O. has “been living a productive, law-abiding life since the

90s” and acknowledged that “[i]f there is a person deserving of an

expungement . . . , it is [T.O.]” The trial judge, as well, stated that T.O.

“would have qualified” for expungement, aside from the statutory bar.

Accordingly, T.O. is entitled to expungement of criminal records related to his

1994 and 1996 convictions.

 VI.

 For the reasons set forth above, we reverse the judgment of the

Appellate Division and grant T.O.’s petition for expungement. We remand the

matter to the trial court to enter an appropriate form of order.

 JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA,
SOLOMON, and PIERRE-LOUIS join in CHIEF JUSTICE RABNER’s opinion.

 29